United States Court of Appeals,
Fifth Circuit.

No. 92-1763

Summary Calendar.

Bennett William WAGGONER, Plaintiff-Appellant,

v.

CITY OF GARLAND, TEXAS, Defendant-Appellee.

April 8, 1993.

Appeal from the United States District Court for the Northern District of Texas.

BEFORE KING, DAVIS, and WIENER, Circuit Judges.

WIENER, Circuit Judge.

In this age discrimination case, Plaintiff-Appellant Bennett Waggoner appeals the district court's grant of summary judgment in favor of Defendant-Appellee City of Garland, Texas (the City) for Waggoner's failure to raise a genuine issue of material fact. After reviewing the record de novo, we affirm the district court's grant of summary judgment.

I

FACTS AND PROCEEDINGS

Waggoner, employed by the City in 1987 as a fleet mechanic, was given written notice of his discharge on October 2, 1989. The discharge notice, sent by Benny Hamilton, director of fleet maintenance, set forth in detail that Waggoner was being fired as a result of sexual harassment claims made by a female co-worker. The discharge notice recounted some of the specific allegations. Hamilton stated that a female employee, Etta Connor, had complained to Denny Phillips, a supervisor, about several incidents involving Waggoner, and that Phillips had reported overhearing Waggoner make several inappropriate comments. Hamilton further stated that he had reviewed the situation and had confirmed that Waggoner had exhibited offensive conduct on more than one occasion. As Waggoner's behavior violated the City's personnel directives, Hamilton concluded that discharge was appropriate.

Waggoner pursued an appeal of his termination through City procedures, and sought unemployment benefits from the Texas Employment Commission (TEC). Concluding initially that the City had fired Waggoner for misconduct, the TEC denied benefits to Waggoner. On appeal, however, the TEC Appeals Tribunal reversed the original determination and found that (1) Waggoner had not committed the offensive conduct; (2) Hamilton, Connor, and Phillips had ulterior motives for lying; and (3) Waggoner had been dismissed without cause.

Waggoner thereafter filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC), based on the Age Discrimination in Employment Act (ADEA).[1] The EEOC issued a determination in August 1990, finding no evidence that Waggoner's termination violated the ADEA. The EEOC concluded that Waggoner was discharged for his offensive sexual and racial remarks. Despite the EEOC's determination, Waggoner filed suit in federal court alleging age discrimination and age-related harassment.

The district court granted partial summary judgment to the City on Waggoner's age-related harassment claim as a result of his failure to raise that claim with the EEOC. Subsequently, the City filed a summary judgment motion on Waggoner's ADEA claim, arguing that his responsive allegations failed to raise a genuine issue of material fact that the City's proffered explanation for his discharge was pretextual. In opposition to this motion, Waggoner proffered his own affidavit and the affidavit of Allen Howey, a co-worker.

In his affidavit, Waggoner: (1) denied the harassment charges; (2) recounted Phillips' comments that Hamilton disliked Waggoner; and (3) claimed Hamilton had called him "an old fart" and had told him that a younger man could do faster work. Waggoner stated his subjective belief that Hamilton wanted to fire him because of his age and, as a result, entered into a conspiracy with Phillips and Connor to fabricate the sexual harassment story. Howey, in his affidavit, testified that six months prior to Waggoner's discharge, Phillips informed Waggoner that Hamilton disliked and wanted to fire Waggoner. Howey also stated that he had never heard Waggoner make any off-color remarks to his female co-workers. Notably, Howey's affidavit makes no reference to age, even by implication.

---

[1] 29 U.S.C. §§ 621-634.

In addition to these affidavits, Waggoner submitted the decision of the TEC Appeals Tribunal with the above mentioned findings. Waggoner insisted that these findings, particularly the finding that he had not been discharged for his conduct, created a genuine issue of material fact on the pretext issue.

In its consideration of the evidence, the court disregarded Waggoner's claims that he did not in fact harass Connor, stating that "the relevant inquiry is whether the decision makers believed at the time of discharge that the employee was guilty of harassment and, if so, whether this belief was the reason for discharge." In addition, the court declined to consider the TEC decision, as the Texas legislature has provided by statute that such findings are inadmissible in subsequent actions. After excluding this evidence, the court concluded that the only evidence submitted by Waggoner were the statements made by Hamilton that Waggoner was "an old fart" and that younger employees could do better and faster work. The court characterized these statements as "stray remarks" that were as a matter of law insufficient to establish age discrimination. Consequently, the court granted the summary judgment motion, and Waggoner timely appealed.

II

ANALYSIS

A. *Standard of Review*

"We review a summary judgment de novo, applying the same criteria as the district court."[2] Summary judgment is appropriate if there is "no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law."[3] An issue is not genuine when there is nothing more than "some metaphysical doubt as to the material facts."[4] In sum, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue

---

[2]*Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991).

[3]Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

[4]*Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

for trial.' "[5]  When a court excludes evidence from consideration on evidentiary grounds, we review that decision for manifest error.[6]

B. *ADEA Claim*

To establish an ADEA claim, a plaintiff must initially create a prima facie case of discrimination by showing that:  (1) he was within the protected class;  (2) he was qualified for the job in question;  and (3) employees outside the protected class were treated more favorably.[7]  Once the plaintiff has established a prima facie case, the burden shifts to the employer, who may rebut the presumption of discrimination by articulating " "some legitimate, nondiscriminatory reason' " for the discharge.[8]  If the employer is able to do so, the burden shifts back to the plaintiff, who must prove at " "a new level of specificity' that the reasons articulated by the employer are not true reasons but only pretexts."[9]  The plaintiff may satisfy his burden of persuasion "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[10]

Both the City and the district court assumed, for the purposes of summary judgment only, that Waggoner had established a prima facie case, and that the burden had shifted to the City to articulate a nondiscriminatory reason for Waggoner's discharge.  The City justified the discharge on the basis of the allegations of Waggoner's sexual harassment of Connor, on its face a legitimate and nondiscriminatory reason.  The burden, therefore, returned to Waggoner to prove that the City's reason was a pretext for age discrimination.  On appeal, Waggoner attempts to demonstrate that there are genuine issues of material fact whether the City's proffered reason is pretextual.

---

[5]*Id.* at 587, 106 S.Ct. at 1356.

[6]*Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 916 (5th Cir.1992).

[7]*Thornbrough v. Columbus & G.R. Co.,* 760 F.2d 633, 639 (5th Cir.1985).

[8]*Id.* (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253-54, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981)).

[9]*Id.* (quoting *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403 (1983)).

[10]*Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

C. *Summary Judgment*

Although summary judgment is not favored in claims of employment discrimination,[11] it is nonetheless proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."[12] In reviewing a motion for summary judgment, the court must draw all inferences in favor of the nonmovant.[13] A court may exclude summary judgment evidence from consideration on statutory or evidentiary grounds.

In viewing Waggoner's summary judgment evidence, the court declined to consider many of Waggoner's statements in his affidavit, ruling that they were made without personal knowledge in violation of Fed.R.Civ.P. 56(e). In addition, the court declined to consider the decision of the TEC, which by statute is not admissible in subsequent proceedings. Waggoner takes issue with both of these evidentiary rulings.

Although Waggoner does not address the court's ruling that many of the statements contained in his affidavits were made without personal knowledge, he insists that his affidavit presents credibility issues that are inappropriate for summary judgment. We agree with the district court, however, that Waggoner's statements concerning a conspiracy among Hamilton, Phillips, and Connor is speculation. We have held that a plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim.[14]

Waggoner argues more forcefully on the second point, i.e., that the district court erred in excluding the TEC decision, which supports some of Waggoner's allegations. The court based its exclusion of the TEC decision on article 5221b-9 of the Texas civil statutes,[15] which provides that findings of the TEC are inadmissible in subsequent actions. On appeal, Waggoner insists that the

---

[11]*Thornbrough,* 760 F.2d at 640.

[12]Fed R.Civ.P. 56(c).

[13]*Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514.

[14]*Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

[15]Tex.Rev.Civ.Stat.Ann. art. 5221b-9 (Vernon Supp.1992).

TEC findings were admissible because article 5221b-9, which precludes their use, did not become effective until twenty days *after* the filing of the instant suit. Application of the statute to the instant case would, in Waggoner's view, amount to an ex post facto law and an impermissible retroactive application of the law. Waggoner's argument is unpersuasive.

In determining whether a statute properly may be applied to actions pending at its passage, the case law recognizes an important dichotomy between substantive statutes—which affect vested rights or impose penalties—and procedural statutes—"the mechanism for maintaining a suit ... includ[ing] pleading, process, and evidence."[16] "A procedural statute controls litigation from its effective date, and it may be applied ... to proceedings pending at the time of its enactment."[17] Article 5221b-9, which limits the evidentiary uses of a TEC decision, is a procedural provision and contains no express provision barring its application to pending cases. Article 5221b-9 is therefore applicable to Waggoner's claim, and the district court did not err in declining to consider the TEC decision.[18] Waggoner also challenges the district court's refusal to consider his evidence regarding the veracity of the underlying charge of sexual harassment. The district court concluded that Waggoner's guilt or innocence of sexual harassment was largely irrelevant; that the true issue was whether the City believed in good faith that Waggoner had committed the offensive behavior and that Waggoner was discharged for that reason. Waggoner insists this is error, referring to language in prior decisions by this court discussing the veracity of the legitimate non-discriminatory reason advanced to justify the discharge.[19] Again, Waggoner misses an important distinction.

In the typical age discrimination claim, the employer's proffered reason for discharge will rely on the employer's own evaluation of the employee, e.g., his work performance was unsatisfactory,

---

[16]*Chislum v. Home Owners Funding Corp.,* 803 S.W.2d 800, 803 (Tex.App.—Corpus Christi 1991, writ denied).

[17]*Rodriguez v. State,* 779 S.W.2d 884, 886 (Tex.App.—Corpus Christi 1989, Review Granted 1990).

[18]Waggoner's argument that application of article 5221b-9 is an ex post facto law is, of course, without merit, as ex post facto prohibitions of the Constitution apply to criminal cases only.

[19]*See, e.g., Thornbrough,* 760 F.2d at 633.

he was a discipline problem, or another employee was better qualified.  In *Thornbrough,* a case in which the employer justified the employee's discharge on the basis of qualifications, we stated:

> Of course the issue in this case is not whether Thornbrough or the retained employees were better qualified.  The [employer] is entitled to make that decision for itself.  The ADEA was not intended to be a vehicle for judicial second-guessing of business decisions, nor was it intended to transform the courts into personnel managers....  However, if the factfinder determines that [the discharged employee] was clearly better qualified than the employees who were retained, it is entitled to conclude that the [employer's] articulated reasons are pretexts.[20]

In other discrimination cases, however, the employer begins an investigation and discharges an employee based on complaints lodged by one or more other employees, such as complaints of sexual harassment.  In those cases, the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, only as to the complaining employee.  The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith, or to the contrary, the employer did not actually believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal.  Thus, the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.[21]

To the extent that Waggoner's summary judgment evidence relates to his innocence of the sexual harassment charge, it is irrelevant.  He must, instead, produce evidence demonstrating that Hamilton or Phillips did not in good faith believe the allegations, but relied on them in a bad faith pretext to discriminate against him *on the basis of his age.*  Indeed, he alleges that Hamilton and Phillips not only knew the allegations were false, but that in fact they fabricated them for the purpose

---

[20]*Id.* at 647.

[21]The Eleventh Circuit recently set forth this rule in detail in *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466 (11th Cir.1991).  We have discussed this rule in the analogous cases alleging retaliatory firing.  *See, e.g., Jones v. Flagship Int'l,* 793 F.2d 714, 729 (5th Cir.1986) (holding that employer who fired employee for soliciting co-workers to join lawsuit needed only good faith belief that employee had actually engaged in the solicitation);  *De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 854 n. 6 (5th Cir.1982) ("Whether St. Joseph was wrong in its determination that she should have checked is irrelevant, as long as its belief, though erroneous, was the basis for termination.");  *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 581 (5th Cir.1981) (Unit B) ("Even if DERM were wrong in its evaluation of the seriousness of the injury and the justiciability of the absences, it did not violate Title VII if it acted on the reasonable belief about the absences.").

of discriminating against Waggoner because of his age. He fails, however, to produce any evidence that supports his conclusionary allegations.

Having determined that some of Waggoner's evidence is either inadmissible or irrelevant, we are left with only the following allegations to support his claim: First, Waggoner reports that six months prior to his discharge, he was informed (by Phillips) that Hamilton did not like Waggoner and wanted to fire him—a statement supported by the affidavit of his co-worker, Howey; second, Waggoner and Howey testified that Connor repeatedly had attempted to transfer to the day shift, but it was only after Waggoner was fired that she received the coveted transfer (Waggoner's purely speculative conclusion is that this supports his theory that Connor lied about his conduct and was rewarded by Hamilton and Phillips); and finally, Waggoner recounts Hamilton's statements that a younger person could do faster work and his reference to Waggoner as an "old fart."

Only the last statement has any conceivable connection to Waggoner's age, but, as we have held on several occasions, a mere "stray remark" is insufficient to establish age discrimination.[22] Moreover, aside from these stray comments, there is no evidence that Hamilton's dislike of Waggoner was in any way connected to his age.

In addition, Waggoner's belief that Hamilton and Phillips engaged in a conspiracy with Connor to fabricate the sexual harassment claim is mere speculation, insufficient to create a genuine issue of material fact. Waggoner's only support for his theory that the sexual harassment claim was fabricated by Hamilton, Phillips, and Connor is the fact that Connor received a desirable transfer to a different shift the day after Waggoner was fired. This too rises to nothing higher than mere speculation, devoid of the required nexus with Waggoner's age.

In closing, we reiterate that in all of Waggoner's evidence one important element is absent—a genuine issue of fact that the City's proffered non-discriminatory reason for Waggoner's discharge was a pretext *for age discrimination.* Hamilton and Phillips may have disliked Waggoner; they may have even sought to concoct a reason for his discharge. Yet, unless Waggoner can connect that

---

[22]*Turner v. North American Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992); *Guthrie,* 941 F.2d at 378-79.

dislike to his age, there is no genuine issue of material fact regarding age or age based discrimination. As we have held that mere stray remarks, with nothing more, are insufficient to establish a claim of age discrimination, we agree with the district court here that there is no genuine issue of material fact, and that summary judgment is therefore appropriate.

For the foregoing reasons, the decision of the district court is

AFFIRMED.