**Christopher Fitzgerald GALLOW,**
**Plaintiff,**

v.

**AUTOZONE, INC., Defendant.**

**Civil Action No. H–94–2205.**

United States District Court,
S.D. Texas,
Houston Division.

June 14, 1996.

Anthony P. Griffin, Galveston, TX, for Christopher Fitzgerald Gallow.

Stephen Rose, Walter W. Christy, Kullman Inman Bee Downing & Banta, New Orleans, LA, for Autozone, Inc.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is Defendant's Motion for Summary Judgment [Doc. # 40]. For the reasons discussed below, Defendant's motion is GRANTED.

### I. FACTUAL BACKGROUND

Christopher Gallow ("Gallow") worked for Autozone, Inc. ("Autozone") from December 1986 until October 1993. He was hired as a full-time sales employee and, over time, promoted to part-time sales manager, assistant manager, manager, and personnel recruiter. In October 1993, Gallow was terminated for what Autozone considered inappropriate conduct. Gallow, an African–American, contends that he was terminated because of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

A summary of Plaintiff's employment history is necessary to an understanding of this case.

Gallow was aware of Autozone's sexual harassment policy[1] and was also aware that

---

**1.** The Autozone employee handbook contains a short section entitled "Sexual Harassment"

the company discouraged managers from dating hourly employees. Gallow Deposition, at 51–52. Nevertheless, Plaintiff invited an hourly employee, Laura Espinoza ("Espinoza"), to dinner one evening, picked her up at her apartment, took her to dinner and brought her home. Apparently, Espinoza reported this event to Gallow's supervisor, Robert Ramirez ("Ramirez"), Regional Recruiting Manager, who questioned Gallow about it. *Id.* at 37–38, 44–45. Plaintiff denied "dating" Espinoza and did not explain in response to the general questions posed by Ramirez that he had taken Espinoza out for dinner.

Autozone conducted an investigation, taking statements from Espinoza and other employees, and, as a result of its investigation, confirmed that Gallow had, in fact, gone to dinner with Espinoza.[2] Autozone also learned that Gallow had made phone calls to Espinoza's home. *See* Ramirez Affidavit; Defendant's Exhs. D and E. After this investigation was conducted, Gallow met with Ramirez, Dennis Tolivar ("Tolivar"), District Manager, and Giles Corum ("Corum"), Loss Prevention Advisor, who further questioned him about dating Espinoza. Initially, Gallow denied, but later confessed, that he had gone to dinner with Espinoza. Gallow Deposition, at 54–56. His prior denials were based on Gallow's view that the evening did not amount to a "date." *Id.* at 38. Regardless of how the evening is characterized, Gallow denies that his conduct constituted sexual harassment. Plaintiff's Original Complaint, ¶ 10.

During the meeting with management, Plaintiff was also informed that a written complaint had been received about him in December 1992 from a female customer who claimed that, while installing a car battery, Gallow had made sexually suggestive and rude remarks to her. Gallow Deposition, at 58–60; Defendant's Exh. G. Gallow denies "harassing" any customer. Plaintiff's Original Complaint, ¶ 10. He suggests that the letter is suspect because the customer's name was blacked out, her name has not been provided to Plaintiff, and Autozone's records do not include customer information (as they normally would) for the sale of the car battery she allegedly purchased. Tolivar Deposition, at 43–45. Nevertheless, Gallow acknowledged that he could be discharged at Autozone's discretion, if he again solicited dates from female Autozone employees or made sexually suggestive remarks. Gallow Deposition, at 61–62. Gallow signed a disciplinary memorandum clearly spelling out these warnings. Defendant's Exh. H.

Shortly after this meeting, Plaintiff was informed that he would be transferred from Houston to South Carolina, where he was sent in September 1993 to learn the district and locate housing. Gallow Deposition, at 63. Plaintiff was shown the territory by another recruiter, Jean Hilton ("Hilton") who, while working with Gallow, registered a complaint about his conduct with Joe May ("May"), Autozone's Regional Recruiting Manager in South Carolina. According to Hilton, Gallow was behaving inappropriately and, in her view, sexually harassing her by making comments like he was the "only stud around." Hilton Deposition, at 29, 37. Hilton further testified that Gallow asked her if she would ever date a black man. *Id.* at 32. Gallow acknowledges asking this question of Hilton. Gallow Deposition, at 111. Hilton also complained that Plaintiff put his hand on her back and that she felt this behavior was inappropriate. Hilton Deposition, at 29, 37. Gallow acknowledges that he put his hand on Hilton's shoulder while riding with her in a car. Gallow Deposition, at 112.

which defines sexual harassment, states that sexual harassment will not be tolerated in the workplace, and provides reporting procedures for employees who believe that they have been sexually harassed. Defendant's Exh. A.

2. Plaintiff opposes the introduction by Defendant of statements taken by Autozone in investigating the Espinoza incident. However, the Court has not relied on these statements in granting summary judgment, because Plaintiff himself admitted taking Espinoza to dinner in a company car. Gallow Deposition, at 40–41. Moreover, these statements were not offered to prove the truth of the matter asserted, *i.e.*, that Gallow took Espinoza to dinner, but to prove that Defendant was on notice as to Gallow's credibility, and that steps were taken by Defendant to investigate the incident with Espinoza. Therefore, the statements are admissible under FED.R.EVID. 801.

May documented Hilton's complaints and relayed them to Bob Osswald ("Osswald"), Director of Recruiting. May Deposition, at 27, 45; Defendant's Exh. J. Osswald then conferred with Jerry Colley, Vice President of Recruiting, and John Marcinik, Director of "AutoZoner" Services, and it was jointly decided that, based on Hilton's complaint, Plaintiff should be discharged, since he had previously been warned about engaging in such conduct. Osswald Deposition, at 29–30; Osswald Affidavit, ¶ 3; Marcinik Affidavit, ¶ 3.

While Hilton's complaint was the alleged basis for Plaintiff's termination, Plaintiff argues that there is another side to the "Hilton" story. Gallow contends that it was Hilton who behaved inappropriately, treating him rudely, and using profanity and racial epithets. Gallow Deposition, at 77–79, 85–87. Specifically, Gallow alleges that Hilton called or referred to him as her "nigger" on several occasions. *Id.* at 85–87. Plaintiff was upset by Hilton's remarks and apparently called another Autozone employee, Freda McGowan ("McGowan"), to discuss what he characterized as a "verbal altercation" with Hilton. *See* Plaintiff's Exh. 3 (Deposition of Freda McGowan), at 7–8. McGowan recalled a conversation with Gallow in which he stated he was upset by statements made by Hilton in South Carolina; however, she did not remember specifically whether Gallow mentioned Hilton's alleged use of a racial slur. *Id.* at 8. McGowan recalled Gallow's dispute with Hilton having "something to do with her being black and him being black." *Id.*[3]

Plaintiff also testified that he reported the Hilton "incident" to Ramirez, his regional recruiting manager; Plaintiff did not lodge a formal complaint, he stated, because he thought that the problem had been handled. Gallow Deposition, at 101–03; 134.

As to the complaint lodged about him by Hilton, Plaintiff alleges that Autozone "began the process of seeking to develop reasons to terminate [him]" instead of investigating Hilton's complaint. Plaintiff's Original Complaint, ¶ 10. Plaintiff further argues that

Hilton dated other Autozone employees but, unlike him, was never criticized, warned or otherwise reprimanded by the company for her conduct. Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), at 2, 22, 54–55.

## II. *SUMMARY JUDGMENT STANDARD*

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the non-movant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the non-movant's case, shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Forsyth v.*

---

**3.** This is somewhat curious in light of the fact that Plaintiff's disparate treatment argument is premised on the fact that Hilton is, in fact, white.

*Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The non-movant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little,* 37 F.3d at 1075. In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

## III. *DISCUSSION*

Plaintiff argues that his termination was based on racial animus in violation of Title VII, and that he was treated more severely than other Autozone employees who engaged in similar conduct. Specifically, Plaintiff argues that Hilton dated other Autozone employees but, unlike him, was neither reprimanded nor terminated for her conduct.

*The Legal Standards.*—The typical circumstantial evidence case analysis for Title VII discrimination claims is well-known. *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1089 (5th Cir.1995) (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The plaintiff must establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor. *Mayberry,* 55 F.3d at 1089. Once established, the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason. *Id.* The burden then shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination. *Id.* at 1089–90. If the defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination created by the prima facie case disappears. *Id.* at 1090. The ultimate burden of proving intentional discrimination remains at all times with the plaintiff. *St. Mary's Honor Ctr.,* 509 U.S. at 506–08, 113 S.Ct. at 2747 (quoting *Burdine,* 450 U.S. at 101, 101 S.Ct. at 1093–94).

Under traditional *McDonnell Douglas* analysis, a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and that the misconduct for which he was discharged was "nearly identical" to that engaged in by an employee outside the protected class whom the employer retained. *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984). *See also Mayberry,* 55 F.3d at 1090 (finding that a requisite element of a prima facie case of disparate treatment is that employees outside the protected group were treated differently under circumstances "nearly identical" to the plaintiff's); *Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991); *Smith v. Wal–Mart Stores (No. 471),* 891 F.2d 1177, 1180 (5th Cir.1990). The prima facie case is established even if the plaintiff's replacement is also a member of the protected class. *Nix,* 738 F.2d at 1185. *See also Byrd v. Roadway Exp., Inc.,* 687 F.2d 85 (5th Cir.1982) (holding that plaintiff's replacement by another black did not necessarily negate the possibility that his discharge was motivated by racial discrimination).[4]

---

4. *But see Norris v. Hartmarx Specialty Stores, Inc.,* 913 F.2d 253, 254 (5th Cir.1990) (finding that the fourth element of a prima facie discrimination case is that the employer filled the position with a person who is not a member of the protected group). The Court adopts the reasoning of *Nix* and *Byrd, supra,* in light of the Supreme Court's recent decision in *O'Connor v. Consolidated Coin Caterers Corp.,* —— U.S. ——, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (holding that the fact that an age discrimination plaintiff was replaced by someone outside the protected class is not a proper element of the *McDonnell Douglas* prima facie case).

When an employee is discharged based on complaints lodged by other employees, the validity of the initial complaint is not the central issue, because the ultimate falseness of the complaint proves nothing as to the employer, but only as to the complaining employee. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1165 (5th Cir.1993). The real issue is whether the employer reasonably believed the employee's allegation and acted on it in good faith or, to the contrary, whether the employer did not believe the co-employee's allegation but instead used it as a pretext for an otherwise discriminatory dismissal. *Id.* The burden is on the plaintiff to demonstrate that the employer did not believe in good faith an employee complaint but relied on it as a pretext for discrimination. *Id.* at 1166.

*Plaintiff's Prima Facie Case.*—Defendant argues that Plaintiff cannot establish a prima facie case under *Norris,* because he was not replaced by a person outside the protected group, but by an African–American. Osswald Affidavit, ¶ 5. Defendant further argues that Plaintiff cannot prove a prima facie case by showing that white employees were treated differently under "nearly identical" circumstances, because Gallow admitted in his deposition that he knew of no whites "who were treated differently under similar circumstances to how [he was] treated in connection with [his] termination." Gallow Deposition, at 117. Finally, Defendant argues that Plaintiff has not met his burden of demonstrating that Autozone did not in good faith believe Hilton's complaint about Gallow's conduct but relied on it as a pretext for discrimination.

In light of the Supreme Court's recent decision in *O'Connor v. Consolidated Coin Caterers Corp.*, —— U.S. ——, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996), *see supra* note 4, the Court does not find that Plaintiff has failed to establish a prima facie case of discrimination, simply because he was not replaced by someone outside the protected group. However, the Court finds that, because of contrary admissions in his deposition, Plaintiff cannot prove a prima facie case by showing that white employees were treated differently under "nearly identical" circumstances. While Plaintiff argues in his Response to Defendant's Motion that his "comparison for disparate treatment is … Hilton," Plaintiff's Response, at 2, he made no such comparison in his deposition, where he admitted that he knew of no whites who were treated differently than he with respect to either discipline or termination. Gallow Deposition, at 117. Therefore, Plaintiff's own testimony establishes that he cannot satisfy a requisite element of a prima facie case of disparate treatment, *i.e.,* that employees outside the protected group were treated differently under circumstances "nearly identical" to his. *See Mayberry,* 55 F.3d at 1090; *Little,* 924 F.2d at 97; *Smith,* 891 F.2d at 1180; *Nix,* 738 F.2d at 1185.

Plaintiff has failed in any event to establish that Hilton's circumstances at Autozone were "nearly identical" to his. While Plaintiff alleges that Hilton also dated other employees, yet was never formally warned or reprimanded, there is little basis for comparison between the two employees. There is no evidence that Hilton had been in previous incidents involving inappropriate behavior. Unlike Plaintiff, Hilton never was accused of making sexually suggestive or any other offensive remarks to a customer or having lied to Autozone management when questioned about involvement with other employees. Nor is there any evidence that, like Plaintiff, Hilton received a warning concerning her behavior. Finally, there is no evidence that any formal complaint was lodged against Hilton by Plaintiff or anyone else concerning her behavior. This is alone dispositive of the dissimilarity between Hilton and Plaintiff. *See E.E.O.C. v. Verbatim Corp.*, 1994 WL 749613, at *4 (W.D.N.C. Nov. 1, 1994) (finding that employees are not "similarly situated" when one employee has received a written warning that any further infractions could lead to termination and the other employee has not received such a warning).

Hilton's conduct with other Autozone employees was distinguishable from Plaintiff's. When told by management to stop dating a subordinate employee or resign, Hilton did not deny the relationship and stopped dating the subordinate. Hilton Deposition, at 12–15. Although Hilton dated a second employ-

ee whom she eventually married, there is no evidence that the company was informed about the relationship, in contrast to Espinoza's report of her date with Plaintiff. Most importantly, there was no supervisory relationship between Hilton and the employee who became her husband. Hilton Deposition, at 24–25. Therefore, unlike Plaintiff, Hilton was not in violation of a company policy discouraging management level employees from dating hourly employees. *See* Gallow Deposition, at 51–52.

Finally, the more appropriate comparison for a disparate treatment analysis is between Gallow and other Autozone employees terminated for sexually inappropriate behavior. The summary judgment record reflects that nine other employees were disciplined for such behavior in 1993 and 1994: four whites, four Hispanics, and one African–American. All were terminated immediately, without prior warning. *See* Lombardi Affidavit and accompanying documentation. This belies Plaintiff's argument that the proffered reason for his termination was a pretext for discrimination.

***Absence of Proof of Intent.***—Even if Plaintiff had established a prima facie case of discrimination, the Court concludes that Defendant has met its burden of articulating a legitimate, nondiscriminatory reason for his dismissal, *i.e.,* Plaintiff's own conduct. Prior to the complaint lodged by Hilton in South Carolina, Plaintiff was reprimanded about having taken Espinoza to dinner (an encounter about which he initially lied to his supervisors), informed about a customer complaint regarding remarks of a sexual nature, and warned that, if he again solicited dates from female employees or made sexually suggestive remarks, he could be discharged at Autozone's discretion. Plaintiff accepted these warnings and signed a disciplinary memorandum stating that soliciting dates or dating female subordinates would not be tolerated. On the heels of this meeting in August 1993, Hilton formally complained to management about Plaintiff's conduct during his visit to South Carolina in September, alleging sexu-

ally charged comments and unwelcome physical contact. Based on his previous warning and Hilton's complaint, Defendant determined that Plaintiff should be terminated.

■ Plaintiff has failed to establish that there is a genuine question of fact as to Defendant's discriminatory intent, or that Defendant's articulated reasons for his termination were a pretext for discrimination. Plaintiff's arguments each will be addressed in turn.

■ Plaintiff first argues that Defendant's "taking the word of Hilton" was not a good faith employment decision and that Defendant's action was motivated by racial animus. Plaintiff's Response, at 7. However, Plaintiff proffers no evidence that Defendant did not reasonably believe Hilton's complaint or that Defendant used the complaint as a pretext for discrimination. An employee's subjective belief that his termination resulted from discrimination is insufficient to create a jury question in the face of proof showing an adequate, nondiscriminatory reason for his release. *See Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 119 (5th Cir.1993).

■ Plaintiff next argues that a fact question exists as to precisely what was said during an altercation with Hilton in South Carolina. While Hilton testified that Plaintiff referred to himself as a "stud" and asked her why she would not date a black man, Plaintiff testified that Hilton used profanity and on several occasions called him a "nigger." This conflicting testimony creates a fact question as to who said what to whom, but it is a fact question which is immaterial to the outcome of the case. It is undisputed that Hilton lodged a formal and strong complaint about Gallow's conduct with her supervisor. The central issue therefore is not whether Hilton made racist comments (which she may in fact have done), but whether or not Defendant reasonably believed Hilton's complaint and acted on it in good faith.[5] *Waggoner,* 987 F.2d at 1165. As discussed above, Plaintiff has proffered no competent

---

5. Any racial animus on Hilton's part may not be attributed to Defendant. Hilton had no supervisory authority over Plaintiff and had nothing to do with the decision to terminate him. Osswald

Affidavit, ¶ 6. Therefore, her remarks do not constitute "direct" evidence of discriminatory intent. *See Brown v. East Miss. Elec. Power Ass'n,* 989 F.2d 858, 860–61 (5th Cir.1993).

summary judgment evidence that Defendant did not believe Hilton's allegations. Autozone took Hilton at her word and, in light of Plaintiff's prior warning, conducted no investigation into her complaint.[6]

Moreover, Hilton chose to lodge a formal complaint about Gallow with her supervisor, indicating an expectation that it would be pursued by the company. In contrast, Plaintiff acknowledged that he chose not to file a formal complaint about what he terms the "nigger" incident, because he had handled the problem with Hilton to his satisfaction. Gallow Deposition, at 102–03. Defendant's failure to act on Plaintiff's information thus is not unreasonable, even if Hilton had, in fact, used racial slurs. Therefore, the Court is unpersuaded by Plaintiff's argument that Defendant's failure to investigate his alleged complaint is evidence of racial animus.

 The Court declines to receive as evidence on this summary judgment motion Plaintiff's vague affidavit testimony that he reported her racist remarks to Autozone *management*, but that nothing was ever done in response to his complaint. Plaintiff's Exh. 2–A, at 1–2. Plaintiff stated in his complaint that he "reported [Hilton's comments] to a fellow recruiter in Dallas, Texas, and a payroll person in South Carolina." Plaintiff's Original Complaint, ¶ 8. Plaintiff's affidavit filed in response to the motion is not only conclusory and unsupported by the record as to the extent of his reports of the incidents, but contradicts previous judicial admissions in his complaint. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (holding that the non-movant's summary judgment burden is not satisfied by conclusory allegations or unsubstantiated assertions); *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir.1984) (noting that the nonmovant cannot defeat a motion for sum-

mary judgment with an affidavit that contradicts prior testimony). Therefore, Plaintiff may not rely on his affidavit testimony in an effort to create a fact question as to Defendant's discriminatory intent.

In a further attempt to create a genuine and material fact question as to Defendant's intent, Plaintiff raises numerous questions about the quality of Defendant's investigations of both the earlier incidents, the Espinoza dinner and the anonymous customer complaint, contending that he was "targeted" by Defendant. While the investigations may have been poorly handled, these questions are not material; Plaintiff was not terminated either for his date with Espinoza or for the anonymous complaint.

First, Espinoza's alleged statement that Giles Corum, the Autozone representative who interviewed her about dating Gallow, told her that he wanted to get rid of Plaintiff, Plaintiff's Exh. 13, at 9, is of marginal probative value. Nothing in Plaintiff's evidence, much of which is hearsay without reliable foundation, *see* Plaintiff's Exh. 13, establishes that the investigator, Corum, or Defendant were motivated by Plaintiff's race. Moreover, any alleged racial animus on Corum's part may not be attributed to Defendant, because Corum had nothing to do with the decision to terminate Plaintiff, and there is no connection shown between Corum's investigation and the individuals responsible for Plaintiff's termination. This decision was eventually made by Bob Osswald, Jerry Colley and John Marcinik, but only after Hilton had lodged her complaint about Gallow's conduct in South Carolina.

Second, it is undisputed that Gallow took Espinoza to dinner and that he was aware that this could be perceived as a "problem" in light of Autozone's policy on sexual harassment. Gallow Deposition, at 51–52.

---

**6.** Plaintiff's summary judgment evidence does not indicate what procedure is usually followed when Autozone receives a complaint from an Autozone employee about a co-worker. If Autozone ordinarily investigates the veracity of co-worker complaints before taking adverse action against employees, the failure to do so in this case might, coupled with other evidence, create a fact question as to Defendant's discriminatory intent. However, the record is silent as to standard procedures regarding co-worker com-

plaints. Defendant, on the other hand, has submitted uncontroverted evidence about other sexual harassment complaints. This evidence demonstrates that its treatment of Hilton's complaint was consistent with its prior practices, and that these practices were followed without regard to race. Thus, the failure to investigate (while possibly a poor business practice) does not establish that Defendant's proffered reason for terminating Plaintiff was a pretext for discrimination.

Therefore, Plaintiff's contentions that Autozone had no formal dating policy, *see* Plaintiff's Response, at 50 n. 8, or that Espinoza considered the dinner inconsequential, *see* Plaintiff's Exh. 13, at 7–8, are hollow. A transcript submitted by Plaintiff of a taped conversation between Gallow and Espinoza establishes that Gallow called Espinoza on a number of occasions, and warned her that they needed to be "careful" about pursuing a social relationship. Plaintiff's Exh. 13, at 8, 24.

Finally, Plaintiff contends that Defendant's reliance on an anonymous customer complaint is suspect, because the customer's name was blacked out and never provided to Plaintiff, Autozone could not locate the customer's name in its computer, and the letter was not brought to Gallow's attention until his meeting with management about Espinoza. Defendant appears to have blacked out the customer's name in response to her desire to avoid any chance of being contacted by Gallow. See Defendant's Exh. G, at 2. Defendant's apparent lack of follow up with this customer does not show racial animus and is an immaterial issue in this case. It is undisputed that no disciplinary action was taken against Plaintiff after receipt of the written complaint.

Moreover, Defendant's handling of the complaint is not evidence of discriminatory intent. At most, it shows poor record keeping or mismanagement of employee relations. Defendant's warning to Plaintiff that he could be terminated for making sexually suggestive remarks to a customer is not unreasonable conduct by an employer.

Therefore, nothing in Plaintiff's Response to Defendant's Motion creates a genuine question of material fact that Defendant's reasons for Plaintiff's termination were mere pretext to cover up a racially motivated decision.

## IV. *CONCLUSION*

For the reasons discussed above, Defendant's Motion for Summary Judgment is GRANTED.