**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1868
_____

KUNLE ADE,
                    Appellant,

v.

KIDSPEACE CORPORATION

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 09-cv-01071)
District Court Judge: Honorable Jan E. Dubois

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 15, 2010
_____

Before: AMBRO, FISHER, GARTH, <u>Circuit Judges</u>.
(Opinion Filed: November 15, 2010)

_____

OPINION
_____

GARTH, *Circuit Judge*:

1

Appellant Kunle Ade ("Ade") appeals from the District Court's grant of summary judgment in favor of appellee KidsPeace Corporation ("KidsPeace"). Ade alleged claims of racial and national origin discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq. ("PHRA"), and 42 U.S.C. § 1981. He also alleged retaliatory termination under 42 U.S.C. § 1981, and common law wrongful termination and breach of implied contract.

The District Court granted appellee's motion for summary judgment as to all claims. In his brief to this Court, Ade does not appeal his common law claims, but appeals the grant of summary judgment as to all other claims. We will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

Ade, an African-American male of Liberian descent, was hired on January 15, 2006 by KidsPeace, a private charity that serves the behavioral and mental health needs of children and teens. Ade began as a late-night child care counselor, a position which provides security and support for residential clients. He worked at the Patriot Center, which is a collection of homes located in Orefield, Lehigh County, Pennsylvania. In April 2006, Ade also began working as a part-time member of the therapeutic support staff at the Patriot Center. In December 2007, KidsPeace terminated Ade.

2

At the time Ade was hired, he was provided with a KidsPeace employee handbook. The handbook includes a Harassment Policy, which prohibits employees from engaging in acts of harassment and/or discrimination based on sex and provides that violations may result in disciplinary action, up to and including termination of employment.

KidsPeace avers that Ade was involved in several inappropriate incidents involving female co-workers, and this was the main reason for his termination.[1] In response to Ade's inappropriate conduct, KidsPeace verbally disciplined Ade and provided him with written discipline prior to termination. After investigating the third and fourth incidents and determining that Ade violated the KidsPeace Harassment Policy, KidsPeace ultimately terminated Ade.

There were four main incidents of inappropriate conduct. First, on January 3, 2007, Kara Williams complained that Ade made sexually inappropriate comments to her about her breasts. According to Williams, Ade pointed to her breasts and stated, "What would you do if I touched those?" KidsPeace maintains that Ade was verbally counseled regarding this incident with Ms. Williams. No formal disciplinary action was taken, but the cases that Ade and Williams shared were reassigned, and Ade and Williams no longer worked together after January 2007.

Second, on March 1, 2007, Pam Peters complained that Ade behaved inappropriately towards her by purposely opening a desk drawer into her stomach. Ms.

---

[1] In addition, Ade was given verbal warnings for violating KidsPeace attendance policies.

Peters' complaint was investigated by KidsPeace, but ultimately, Ade was not disciplined for the incident because Peters' allegations could not be corroborated.

The third incident occurred the night of March 22, 2007. Ade and Jeanine Martincavage were working together as late night counselors at Revere house. The incident began when Ade became angry that Martincavage was feeding stray cats. The versions of the story vary slightly—Ade avers that Martincavage pushed him before he pushed her—but it is clear that during the exchange Ade pushed Martincavage. Ms. Martincavage also alleged that Ade repeatedly cursed at her and threatened to hurt the cats. In response to the incident with Martincavage, KidsPeace employees conducted an investigation, during which they obtained statements from both Ade and Martincavage. KidsPeace ultimately concluded that Ade's actions violated the KidsPeace Employee Conduct and Harassment Policies. Ade's actions were deemed to be discourteous and abusive and were thus grounds for immediate termination. Nevertheless, Ade was not terminated and was provided with a final written warning. On April 4, 2007, three days after receiving the warning, Ade provided Doran with a letter stating he felt that KidsPeace's decision was unfair and biased.

Finally, on November 25, 2007, Ade worked a night shift with Amanda Warner. Three days later, Ms. Warner reported a complaint to Donna Doran, a Supervisor at the time. Warner complained that Ade sexually harassed her both verbally and physically. She told Doran that Ade forced himself on top of her, touched her breasts and tried to kiss her. She also stated that when she told him to stop and raised her voice, he covered her mouth with his hand. Warner prepared a handwritten complaint for Doran. Upon

4

complaint by Warner, KidsPeace began an investigation. As part of this investigation, Ade was questioned and given an opportunity to provide his side of the story, though he was not shown a copy of Ms. Warner's written complaint. Based upon the results of this investigation and Ade's history of inappropriate conduct, he was placed on immediate administrative leave with the recommendation that he be terminated.

On or about December 2, 2007, Ade met with Amy Remmel in Human Resources. Ms. Remmel testified that during this meeting Ade stated that he did not trust the women at KidsPeace. Finally, on December 4, 2007, KidsPeace terminated Ade.

Ade makes several allegations of conduct that are pertinent to his claims of discrimination and retaliation. Ade's allegations can be summarized as follows: (1) that certain employees at KidsPeace made discriminatory comments toward him; (2) that KidsPeace treated Ade unfairly in regard to complaints of sexual harassment made against him; and (3) that KidsPeace generally treated white employees more favorably than black employees.

When Ade was hired, he was initially assigned to work under Jane Marino, a Supervisor, and Donna Doran, an Assistant Supervisor at the time. On or about his third day of work, Ade met Pam Peters, a colleague who never exercised supervisory authority over him. Ms. Peters was a fellow late night child care counselor. When Marino introduced Ade to Peters, Peters asked Ade if it were true that he was from Africa and commented that Ade did not have the "typical African accent." She then asked Ade: "Is it really true you people from Africa wear leaves?" Ade complained about the comment to Ms. Marino once that day and once a few months later as part of a more general

5

conversation. About a year after being hired, Ade complained about the comment to Scott Pompa, a late night manager for KidsPeace.

In approximately May or June of 2007, Ade was eating lunch with a Syrian co-worker, who offered him some Syrian food. Ms. Doran, who at this point had been promoted from Assistant Supervisor to Supervisor, pointed to the food and said "That looks like a turd. Will you eat that?" She then asked, "you guys eat stuff like that in Africa?" Ade reported this comment to Ms. Remmel. Ms. Remmel told Ade he should discuss the comment with her boss Scott Pompa if he wanted to pursue the complaint. After this discussion, Ade never discussed the comment with Pompa or made a formal complaint about it.

In addition to complaints about discriminatory comments, Ade alleges that he was treated unfairly in regard to allegations of inappropriate conduct and sexual harassment against him. Ade alleges that, after the incident with co-worker Jeanine Martincavage, he was treated less favorably than her. Ade alleges that Martincavage pushed him to prevent him from scaring the stray cats, and he then pushed her back. Ade argues that he was written up for this incident but Ms. Martincavage was not because of their different racial backgrounds.

Ade also alleges that he was treated unfairly regarding Amanda Warner's accusations of sexual harassment against him. After Warner made an accusation of sexual harassment against Ade, Ade denied the accusations, and complained verbally to Doran and Lea Nissley on November 28, 2007 that he was being treated differently because of his race and gender. Ade asked to see the written complaint by Ms. Warner,

6

but Remmel would not show it to him. Ade wrote a letter to Doran requesting that KidsPeace investigate Ms. Warner's accusations, and gave this letter to Remmel on December 3, 2007.

Finally, Ade alleges that black employees were generally treated less favorably than white employees. He points to the fact that certain white employees were not punished for feeding stray cats. However, KidsPeace maintained no official policy against feeding stray cats. Ade further points to the fact that KidsPeace terminated a black employee, Sherwood Dejoie, for sleeping on the job, but did not discipline white employees who allegedly slept on the job. Ms. Doran personally observed Dejoie sleeping on the job three or four times. The evidence of white employees sleeping on the job consisted of pictures that Ade took of these employees.

Ade alleges that Jeff Onuschco, a white employee, sexually harassed co-workers, but was not disciplined for it, while Ade was terminated for alleged sexual harassment. Ade has provided the following evidence that Onuschco sexually harassed co-workers. First, Jacqueline Burns, a former employee of KidsPeace, testified in her deposition that Jeff made inappropriate comments to her between May 2006 and October 2006. She further testified that she told Ms. Marino about these comments. She also testified that she wrote something down regarding the issue and gave it to Ms. Marino.

Additionally, Kimberly Fleming-Arnold testified that Mr. Onuschco sent her a naked picture of himself. She testified that she told him to stop, and he did thereafter; thus she took it no further. Ms. Fleming-Arnold's husband testified that, in the summer of 2006, he reported to Mr. Pompa that Mr. Onuschco had sent sexual emails to his wife.

7

He testified that Mr. Pompa dismissed the complaints. Mr. Arnold then spoke with Bob in Human Resources, and handed him certain emails from Mr. Onuschco to Ms. Arnold.

Finally, Ade argues that employees were not disciplined for stealing money from the children's fund box. Kathleen Somers, an employee at KidsPeace, testified that she was aware that money from the children's funds was being taken. She reported this to the man who had control of the money box, Sean McPeek, a Caucasian. McPeek gave her the "runaround." Somers never reported the issue to anyone else.

Pertinent to his retaliation claim, Ade alleges the following adverse employment actions. First, Ade was assigned to work at Paul Revere House, a co-ed house, after he requested not to be assigned to this house. Second, Ade was terminated.

## II.

The District Court had subject matter jurisdiction over Ade's federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

This Court's scope of review over the District Court's grant of summary judgment is plenary. *Lauren W. v. Deflaminis*, 480 F.3d 259, 265 (3d Cir. 2007). We affirm those orders if our review reveals that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* We review the facts "in the light most favorable to the non-moving part[y], and draw all reasonable factual inferences in" his favor. *Id.* A genuine issue of material fact exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

A. Race and National Origin Discrimination claims

The framework for evaluating summary judgment motions under Title VII was established by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802 (1973). As explained in *Texas Dept. of Cmty. Affairs v. Burdine*:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

450 U.S. 248, 252-53 (1981) (internal citations and quotation marks omitted). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253. Section 1981 and PHRA claims alleging race and national origin discrimination are analyzed under the same burden-shifting framework as Title VII claims. *Jones v. School Dist. of Phila*, 198 F.3d 403, 410 (3d Cir. 1999).

Even if we assume that Ade has established a prima facie case of discrimination, KidsPeace has satisfied its burden of articulating a legitimate reason for Ade's termination: Ade's violation of the KidsPeace Harassment Policy. Ade fails to satisfy

9

the third step of the *McDonnell Douglas* framework because he has provided insufficient evidence to establish that KidsPeace's proffered legitimate reason was a pretext for discrimination.

Ade's evidence fails to cast sufficient doubt upon KidsPeace's reason for terminating him. The ultimate question is not whether KidsPeace was absolutely right to determine that Ade had violated the Harassment Policy, but whether it was so clearly wrong as to imply a discriminatory animus.

To counter KidsPeace's assertions that he violated the Harassment Policy and engaged in inappropriate conduct, Ade simply offers denials of his own inappropriate conduct, and his opinion that the real reason was a racial animus. A denial that he engaged in the conduct for which he was purportedly terminated is insufficient to create a genuine issue of material fact. *See Waggoner v. Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (veracity of underlying charge "largely irrelevant" where employer had "good faith belief" that employee committed offensive behavior). His own personal belief that the true reason for the discharge was racial discrimination is similarly insufficient to create a genuine issue of material fact. *See id.* at 1164 (subjective belief that discharge was based on a discriminatory animus insufficient to establish claim for purposes of summary judgment).

Ade disputes the substance of the harassment claims, but cannot dispute that complaints were made to KidsPeace management and that KidsPeace investigated those complaints. The record reflects that KidsPeace was made aware of four separate incidents involving Ade and different female employees. KidsPeace investigated the

misconduct regarding three of these complaints, verbally counseled Ade for the first, and determined that disciplinary action was required in response to the third and fourth. In response to the Martincavage incident, KidsPeace found Ade had violated its policies and issued Ade a written warning, stating that any further incident could lead to termination. Finally, after an investigation into the Warner complaint, KidsPeace again determined that Ade had violated the organization's harassment policy, and ultimately terminated his employment. The record does not display sufficient, if any, facts to demonstrate that KidsPeace's proffered reason is plainly wrong.

Ade can also survive summary judgment by pointing to evidence in the record "from which a factfinder could reasonably . . . believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). For example, a "plaintiff may show that the employer has previously discriminated against [him], that the employer has discriminated against other persons within the plaintiff's protected class or within another protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 645 (3d Cir. 1998).

Ade points to two discriminatory comments allegedly made to him by Pam Peters and Donna Doran. These two comments were temporally remote and do not tend to show a discriminatory reason was more likely than not a motivating cause of his discharge. Peters' comment was made nearly two years prior to Ade's termination, and further, Peters never maintained any supervisory authority over Ade and was not responsible for

11

the decision to terminate him. *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").

Doran was Ade's supervisor and involved in the decision-making process to terminate Ade, but her comment and question relating to a piece of food, made approximately six months before Ade's termination, are insufficient to show that a discriminatory animus was the likely cause of the adverse action. *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1112 (3d Cir. 1997) (comment made by decision maker approximately four to five months prior to termination insufficient to prove by a preponderance of the evidence that discrimination was a determinative cause of employee's termination). Finally, the notion that Ade was discriminated against because KidsPeace did not accommodate his requests to change facilities is unsubstantiated; there is no evidence that this was motivated by any discriminatory animus.

Ade's argument that KidsPeace generally treated employees differently based on their racial background is not supported by the record. Ade contends that white employees who were caught sleeping on the job were not fired, while a black employee was fired for the same behavior. It is true that a black employee was fired for sleeping on the job several times. However, a supervisor personally observed this employee sleeping on the job. The evidence that Ade presents of white employees sleeping on the job consists of photographs that Ade himself provided to KidsPeace. These photos, in addition to not being personal observations by KidsPeace management, are extremely

12

blurry and not conclusive as to whether any of the individuals pictured were asleep. Thus this evidence is not probative of differential treatment.

Ade's attempts to show that similarly situated individuals not in the protected class were treated more favorably than him is similarly unavailing. Ade's comparators engaged in very different conduct than that which led to Ade's termination.

Feeding stray cats is entirely different conduct from sexual harassment and verbal and physical abuse; it was not the same level of seriousness, nor was it even a clear violation of KidsPeace policy.

Ade asserts that he was denied a request for personal leave of absence, yet KidsPeace allowed Scott Pompa, a Caucasian employee, to take six months of personal leave. Pompa, however, was a Manager of Residential Programs and held an entirely different position to Ade. The two were therefore not similarly situated.

With respect to the alleged theft of the children's funds, there is no evidence that any complaint was ever made to any manager or human resources employee. Without knowledge of wrongdoing, management could not take any action. Thus this situation is inapposite.

Finally, Ade argues that he was treated differently from a similarly situated employee because he was terminated for violating the sexual harassment policy, whereas KidsPeace did not discipline Jeff Onuschco, a Caucasian employee, for allegedly subjecting female co-workers to sexual harassment. However, the District Court was correct to point out that there was a key difference between Ade and Onuschco. All of the allegations regarding Onuschco related to sexually explicit comments made to female

13

employees; there are no allegations that Onuschco ever inappropriately touched a female employee. Ade, on the other hand, allegedly pushed Jeanine Martincavage and forced himself on top of Amanda Warner. Additionally, the record discloses four instances of complaints to superiors of inappropriate conduct by Ade, while only one female employee (and one male non-employee) complained to KidsPeace supervisors about Onuschco's conduct.

In summary, Ade's evidence is insufficient as a matter of law to show that KidsPeace's proffered legitimate reason for terminating him was pretextual. The District Court properly granted summary judgment on Ade's claims of race and national origin discrimination.

B. Retaliation claim

Ade claims that KidsPeace terminated him in retaliation for engaging in protected activity—namely, his various complaints to KidsPeace that he was being discriminated against based on his race. The District Court applied the *McDonnell Douglas* burden-shifting framework to the retaliation claim and concluded that Ade could not meet his burden of establishing that KidsPeace's proffered legitimate reason was a pretext for retaliatory termination. On appeal, Ade argues that the *McDonnell Douglas* framework is not the correct framework for analyzing retaliation claims and that a plaintiff is not required to show pretext on a retaliation claim. However, Ade's claim fails both under the *McDonnell Douglas* framework and under *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006), and *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

14

The evidence indicates that KidsPeace terminated Ade for legitimate reasons relating to his conduct as an employee.

The District Court was correct to grant KidsPeace's motion for summary judgment as to Ade's retaliation claim.

IV.

The District Court did not err in granting summary judgment to KidsPeace. For the foregoing reasons, we affirm the judgment of the District Court.