**Daniel de la TORRES, Plaintiff,**

v.

**William F. BOLGER, Postmaster General, United States Postal Service, et al., Defendants.**

Civ. A. No. 3–82–2144–H.

United States District Court,
N.D. Texas,
Dallas Division.

May 9, 1985.

Gabriel Robles, Eloise V. Vellucci, Vellucci & Keane, Dallas, Tex., for plaintiff.

Charles Ory, Asst. U.S. Atty., Dallas, Tex., Lori Joan Dym, Atty. Office of Labor Law, U.S. Postal Service, Washington, D.C., for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

SANDERS, District Judge.

Plaintiff Daniel de la Torres brings this civil action under the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, alleging that he was subjected to discrimination in the termination of his probationary employment with the United States Postal Service on the basis of his handicap, specifically his left-handedness. Plaintiff seeks reinstatement to his position as probationary letter carrier.

This case was tried before the Court without a jury on March 21–22, 1985, and on May 3, 1985. Based on the pleadings, the evidence adduced at trial, the stipulations, the arguments of counsel, the notes of the Court and the law clerk, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Fed.R. Civ.P. 52(a). Any findings which constitute conclusions or conclusions which constitute findings should be deemed the other, as appropriate.

### Findings of Fact

1. Plaintiff worked at the Fairview Station of the Houston, Texas Post Office from June 3, 1978 until July 14, 1978, as a part-time flexible letter carrier. *See Alderson v. Postmaster General,* 598 F.Supp. 49, 50–51 (W.D.Okla.1984) (describing duties in detail). He was hired for a 90-day probationary period.

2. Plaintiff is a natural born left-handed person. Except for writing, he uses his left hand as his primary hand.

3. After completion of a three-day general orientation course, Plaintiff reported to work at the Fairview Station, where he received three days of initial training in street mail delivery by Cecil Lewis, a certified trainer.

4. Plaintiff experienced difficulty in associating the mail with street addresses using his right hand and in locating mail boxes.

5. Plaintiff's Supervisor James Walker, after personal observation and review of records, felt that Plaintiff was taking inordinate time to complete his appointed rounds. Walker arranged for Plaintiff to receive an additional 16 hours of training from Jose Luis Cuellar, also a certified trainer.

6. Both of the trainers instructed Plaintiff to use his right hand to "finger" and deliver mail. Neither had previously trained a left-handed carrier, and had received no specialized training in doing so.

7. Although the "casing" procedure is currently structured and oriented so as to

require it to be performed right-handed, there is no physical reason why the delivery of mail cannot be done with a carrier's left hand. Both trainers instructed Plaintiff to use his right hand because he appeared awkward to them when he used his left hand.

8. Plaintiff testified that, after his initial training, he reverted to using his left hand to deliver mail when he was on his routes unsupervised.

9. Mail casing at Fairview in July 1978 was to be performed with the right hand, regardless of whether the carrier was right or left handed. Although Plaintiff had some opportunity to acquaint himself with the casing process, the greater weight of the evidence suggests that his termination was not related to any inability to case mail efficiently. Station Manager Floyd did state at the EEOC hearing, however, that this was a contributing consideration. Plaintiff's Exhibit 2 at 91.

10. On July 2, 1978, Walker observed Plaintiff and his son in a postal vehicle, a violation of safety regulations.

11. On July 3, 1978, Walker completed a Standard Form 1750 "Employee Probationary Evaluation Report". Plaintiff was rated unsatisfactory in four of twelve areas, and his termination was recommended.

12. Plaintiff was terminated effective July 14, 1978.

13. Defendants now claim that Plaintiff was terminated due to his continued slowness in delivering the mail, despite the additional training provided him and unrelated to the hand Plaintiff may have chosen to utilize. In support of this contention, Defendants proffer Exhibit 14, a reconstructed version of the destroyed original of Form 1750, copy of which is Defendants' Exhibit 1, which purports to illustrate that Plaintiff's time to complete his assigned "splits", or overflow mail from regular carriers' routes, were excessive, with no indication of improvement.

14. The circumstances surrounding the preparation of the date on Exhibit 14, several inconsistencies within it, and the destruction of the underlying documentation is suspicious. *See* Plaintiff's Motion to Strike Defenses. Plaintiff's testimony that the times are exaggerated is, for the most part, credible. He asserts that any delays were attributable solely to his unfamiliarity with the territory, and his termination was due to a most peculiar bias of Walker against southpaws.

15. Ernest Gamboa, a left-handed carrier who began his career at Fairview, stated that he had never encountered any difficulty whatsoever in delivering mail with his right hand. He confirmed, though, that his trainer, Cecil Lewis, required the use of his right hand.

16. Plaintiff's expert witness, Dr. William Tedford, a clinical psychologist at Southern Methodist University, testified that Plaintiff is a "moderately left-handed" individual on a continuum of handedness, and the attempt to convert him away from the use of his preferred hand would cause muscle strain, emotional upset, awkwardness, and slower performance times.

*Conclusions of Law*

1. The Court has jurisdiction over the subject matter and parties to this action. Venue is proper in the Northern District of Texas.

2. Title 29, United States Code, § 794 provides, in relevant part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... by the United States Postal Service.

Section 706(7) defines "handicapped individual" as:

any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

3. Plaintiff argues that he was regarded by personnel at Fairview as having a

handicap by virtue of being a left-handed letter carrier.

■ 4. The term "handicapped" is not defined in the Rehabilitation Act. The EEOC regulations promulgated under the Act provide guidance that is entitled to some deference. *See Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir.1981). 29 C.F.R. § 1613.702 provides:

(b) "Physical or Mental Impairment" means (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities. ·

(c) "Major Life Activities" means functions, such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

\* · \* \* \* \* \*

(e) "Is regarded as having such an impairment" means (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by an employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitude of an employer toward such impairment; (3) or has none of the impairments defined in (b) of this section but is treated by an employer as having such an impairment.

■ 5. Plaintiff has the burden of proving, by a preponderance of the evidence, that he is a "handicapped individual". *Doe v. New York University*, 666 F.2d 761 (2d Cir.1981). Plaintiff has not carried this burden. Being left-handed is "a physiological condition ... affecting the neurological and musculoskeletal systems", but it is no more so than (and no more of

impairment than) being right-handed or ambidextrous. The Court is of the opinion that "impairment" cannot be divorced from its dictionary and common sense connotation of a diminution in quality, value, excellence or strength. Plaintiff, in all evident manifestations, enjoys perfect health, has performed a wide variety of jobs without apparent difficulty and was an accomplished college athlete. To apply the terms of the Rehabilitation Act, the purpose of which was to prevent employment discrimination that would render futile the federal programs of vocational rehabilitation, *Consolidated Rail Corp. v. Darrone*, 465 U.S. 624, 104 S.Ct. 1248, 1253 and n. 12, 79 L.Ed.2d 568 (1984), would bind Congress to the formation of a wholly unimaginable civil rights violation.

The Court is unable to find any probative federal case law. In *American Motors Corp. v. Labor and Industry Review Commission*, 8 F.E.P. Manual 421:661 (No. 82–389), the Wisconsin Court of Appeals rejected a plaintiff's claim that her short stature, the employer's basis for declining to hire her, constituted a handicap for purposes of a state employment discrimination law. The court observed that the plaintiff had "no condition that could be considered a physical disability or impairment", and that the recognition of her claim would yield "no logical stopping point for the myriad heights and weights that could become handicaps".

Accordingly, Plaintiff cannot prevail under 29 C.F.R. § 1613.702(e)(1) or (e)(2). The Court also rejects Plaintiff's contention that his forced conversion to a right-handed carrier at Defendants' command rendered him handicapped. Such an interpretation would permit a cause of action for any job-related stress.

6. This conclusion is reinforced by the authority interpreting "substantial limiting of major life activities".

■ An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment otherwise is not "substantially

limiting" for purposes of the Rehabilitation Act. *Jasany v. United States Postal Service,* 755 F.2d 1244, 1249 (6th Cir.1985); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1099–1100 (D.Hawaii 1980).

Defendants did not regard Plaintiff as one "substantially limited" from working, based on this interpretation of the statute. If he was so regarded, neither he nor Gamboa would have been hired in the first place.

7. Not having a statutorily cognizable impairment, Plaintiff is only potentially eligible for the classification in § 1613.-702(e)(3), *i.e.,* has no impairment but is treated by an employer as having one. This category is presumably directed to protecting individuals who may be completely recovered from a previous mental or physical impairment (such as the mentally restored, or those who have had heart attacks or cancer) or individuals who may have been erroneously classified as handicapped (such as the developmentally disabled). Or, simply put under § e(3), there must be evidence that Plaintiff's supervisors regarded him as having an impairment *as that term is defined* in the regulations. *Stevens v. Stubbs,* 576 F.Supp. 1409, 1414 (N.D.Ga.1983) (no impairment found in case of transitory illnesses) (emphasis added). While Plaintiff was certainly recognized as being left-handed, and Defendants may well have regarded that as a trait that would have to be overcome and repressed, there is no indication that it was regarded as an "impairment" within the terms of the Rehabilitation Act.

8. Accordingly, Defendants are not liable to Plaintiff under the Rehabilitation Act. A judgment will be entered accordingly.

SO ORDERED.