840 F.2d 11
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Arnold PERSINGER, Plaintiff-Appellant,
v.
CITY OF HUNTINGTON and Huntington Police Pension Board,
Defendant-Appellee.
 No. 87-1631.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 4, 1988.
Decided Feb. 17, 1988.
 
 James Allan Colburn (Baer, Robinson & Colburn on brief) for appellant.
 Jeffrey Allen Taylor, Assistant City Attorney, for appellees.
 Before POWELL, Associate Justice (retired), United States Supreme Court, sitting by designation, ERVIN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Arnold Persinger was granted a disability retirement from the Huntington Police Department on November 12, 1980, because of knee injuries. His pension was calculated without factoring in his "payout," or his accumulated sick time and other compensations. All disability retirees' pensions exclude the payout. After exhausting his administrative remedies he filed suit, alleging that he, as a handicapped person, has been discriminated against because of this different treatment of retirees based on disability. The district court ruled that Persinger was not handicapped within the meaning of the Rehabilitation Act of 1973. As a result, the district court did not reach the claim that the pension money was discriminatorily allocated. Because we find no error below, we affirm.
 
 I.
 
 2
 Arnold Persinger began employment with the City of Huntington as a police officer on November 19, 1964, and served with the Department for approximately 16 years. On November 12, 1980, he was granted a disability retirement from the City of Huntington; due to injuries to his knee, Mr. Persinger was no longer able to perform all of the duties of a police officer.
 
 
 3
 On November 15, 1980, Persinger began to receive his pension from the Huntington Police Pension Board. His pension was calculated according to the formula set out for computing disability pensions for police and firefighters in West Virginia Code Chapter Eight, Article Twenty-Two, Section Twenty-four, Subsection F [Sec. 8-22-24(f) ] (1971) (current version at Sec. 8-22-24 (1986)), which provides that the monthly pension for a disability retirement "shall be equal to sixty percent of the monthly salary or compensation being received by such member, at the time he is so disabled, or the sum of two hundred dollars per month, whichever shall be greater."
 
 
 4
 The monthly sum awarded to Persinger by the Police Pension Board was $791.35 per month, which was determined by taking the total salary or compensation received by the plaintiff for the year immediately preceding the date of determination of disability, dividing that amount by twelve to get a "monthly" figure, and taking sixty percent of that "monthly" figure.
 
 
 5
 Upon retirement, the plaintiff also received from the City of Huntington a check in the amount of $10,068.00 which represented reimbursement for the plaintiff's accumulated sick leave and vacation leave. The Huntington Police Pension Board does not include such "pay-out" checks in the computation of monthly disability pensions, and thus did not include the plaintiff's "pay-out" in the computation of his monthly pension. The Huntington Police Pension Board does, however, include such "pay-outs" in the computation of the monthly pensions of regular retirees.
 
 
 6
 To qualify for regular, honorable retirement, a police officer must have been in the honorable service of the department for twenty years and must be at least fifty years old. See West Virginia Code Chapter Eight, Article Twenty-two, Section Twenty-five, subsection A [Sec. 8-22-25(a) ] (1971) (current version at Sec. 8-22-25 (1985)), which provides that monthly pension for regular retirees is to be computed by taking "sixty percent of such member's average annual salary or compensation received during the three fiscal years, not necessarily consecutive, in which such member received his highest annual salary or compensation while a member of the department or an amount of two hundred dollars per month, whichever shall be greater." Persinger stipulated that he did not meet the statutory requirements to take regular retirement.
 
 
 7
 The Police Pension Board's exclusion of Persinger's "pay-out" in the computation of this monthly disability pension has given rise to this cause of action. Persinger alleges that the defendants are in violation of Section 504 of the Rehabilitation Act of 1973, which prohibits a program or activity receiving federal financial assistance from discriminating against otherwise qualified handicapped individuals. 29 U.S.C. Sec. 794 (1978). The district court found otherwise and we agree.
 
 II.
 
 8
 Persinger brought this lawsuit under the auspices of 31 U.S.C. Sec. 6716, which prohibits "discrimination against an otherwise qualified handicapped individual under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. at 794) by a "program or activity of a ... unit of local government [that] receives a payment under this chapter." Section 504 of the Rehabilitation Act of 1973 reads in pertinent part:
 
 
 9
 No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ... 29 U.S.C. Sec. 794.
 
 
 10
 For the purposes of the prohibition against discrimination on the basis of handicap, "handicapped individual" is defined in 29 U.S.C. Sec. 706(7):
 
 
 11
 (A) [T]he term "handicapped individual" means any individual who (i) has a physical or mental disability which for such individual constitutes or results in a substantial handicap to employment and (ii) can reasonably be expected to benefit in terms of employability from vocational rehabilitation services provided pursuant to subchapters I and III of this chapter.
 
 
 12
 (B) [T]he term "handicapped individual" means for purposes of subchapters IV and V of this chapter, any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.
 
 
 13
 The district court found that Persinger is currently employed by the United States Department of Labor as an OSHA Safety Specialist. His duties include walking while carrying equipment weighing from 20 to 25 pounds, standing for upwards of an hour while observing machinery, and interviewing persons. The job requires Persinger to be able to tolerate "frequent walking, standing, bending, climbing, crouching, reaching and lifting a variety of moderately heavy items." Jt.App. at 173. Persinger said, "I do these things but consider myself handicapped." Id.
 
 
 14
 Both parties to this suit, and the district court, cite Forrisi v. Bowen, 794 F.2d 931 (4th Cir.1986), a case very similar factually to the present case, for the proposition that a substantial limitation of a major life activity is required to be considered handicapped. Forrisi was a utility systems repairer with acrophobia; he could no longer climb poles. He argued that he wasn't really handicapped but he was treated as handicapped by his employer. In this case, Persinger argues that he is truly handicapped. In both cases the claimants arguably are disabled from performing their jobs, but that does not translate into section 794 handicapped status. In neither case is the claimant substantially limited in a major life activity. See also de la Torres v. Bolger, 610 F.Supp. 593 (N.D.Tex.1983) (an impairment that interferes with the ability to perform a particular job, but does not decrease the individual's ability to obtain satisfactory employment elsewhere, does not substantially limit that person for purposes of section 794). This court explained the Congressional intent behind the statutory requirement of a substantial limitation of a major life activity.
 
 
 15
 The Rehabilitation Act assures that truly disabled, but genuinely capable, individuals will not face discrimination in employment because of stereotypes about the insurmountability of their handicaps. It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment.
 
 
 16
 Forrisi, 794 F.2d at 933-34.
 
 
 17
 In this case, the evidence showed that Persinger's major life activities such as caring for himself, performing manual tasks, walking, seeing and hearing, were completely unimpaired. The City did not treat Persinger as a handicapped person; he worked for some months with his knee impairment. Jt.App. at 182. Furthermore, his current job as an OSHA inspector attests to his lack of substantial impairment. We see Forrisi as controlling here, and hold that Persinger is not handicapped.
 
 
 18
 The district court's dismissal of this action is affirmed.
 
 
 19
 AFFIRMED.