**Paul Richard BUMSTEAD et al.**

v.

**JASPER COUNTY et al.**

**No. 1:94–CV–632.**

United States District Court,
E.D. Texas,
Beaumont Division.

July 3, 1996.

Patrick J. Gilpin, Patrick Gilpin & Associates, Houston, TX, for Richard Victor Bumstead, Paul C. Few, Jr.

Frank David Calvert, Benckenstein & Oxford, Beaumont, TX, for Jasper County, Roscoe Davis.

### *MEMORANDUM RE: DEFENDANTS' SEPTEMBER 25, 1995 MOTION FOR SUMMARY JUDGMENT AND JANUARY 25, 1996 SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT*

HINES, United States Magistrate Judge.

Plaintiffs Richard Victor Bumstead and Paul C. Few, Jr. bring this employment discrimination suit against Jasper County, Texas and Roscoe Davis, Sheriff of Jasper County.

All parties consented to proceed before a United States magistrate judge pursuant to 28 U.S.C. § 636. The case is referred to the

undersigned to conduct all proceedings and order entry of judgment.[1]

## I. Nature of the Case

Plaintiffs allege wrongful termination from public employment as Jasper County, Texas sheriff's deputies in February 1993 as a result of their age and, in Mr. Bumstead's case, also as a result of a physical disability. Both plaintiffs sue Jasper County and Roscoe Davis under 42 U.S.C. § 1983 for deprivation of a state-created property interest without due process of law. Both plaintiffs sue Jasper County under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. Finally, plaintiff Richard Victor Bumstead sues Jasper County under provisions of the Rehabilitation Act of 1973, 29 U.S.C. § 794 et seq.

## II. The Motion for Summary Judgment

Defendants filed an initial and supplemental motion for summary judgment. Initially, defendants claimed that plaintiffs did not possess a property interest in continued employment as a result of the longstanding Texas common law presumption of at-will employment. Therefore, plaintiff failed to state a cause of action cognizable under § 1983. Moreover, defendant Roscoe Davis claimed protection in any event by the doctrine of qualified immunity. Defendant Jasper County further asserted that no cogniza-

ble cause of action exists under the Age Discrimination in Employment Act because plaintiffs were terminated for a nondiscriminatory, nonpretextual reason: inability to fulfill job duties. Finally, defendant Jasper County asserted that plaintiff Bumstead failed to establish that his employer viewed him as having an impairment substantially limiting his ability to engage in the major life activity of employment.

Plaintiffs responded that provisions in their employment manual created a property interest in continued employment with the county and that they were deprived of that right without procedural due process when they were summarily terminated in violation of clearly established law.[2] Plaintiffs further contended that the evidence introduced on their age discrimination claim is sufficient to raise a genuine issue of material fact and therefore the claim is not amenable to disposition via a motion for summary judgment. Finally, plaintiff Bumstead argued that he has stated a prima facie discrimination claim under the Rehabilitation Act.

Defendants thereafter, and prior to ruling from the court on the first motion for summary judgment, filed a supplemental motion for summary judgment.[3] Defendants now argue that Texas law specifies that sheriff's deputies serve at the pleasure of the sheriff

---

1. *Bumstead et al. v. Jasper County et al.,* No 1:94–CV–632 (E.D.Tex. Apr. 17, 1995) ("Consent to Proceed Before United States Magistrate Judge and Order of Reference" signed by United States District Judge Joe J. Fisher).

2. The front page of the handbook in this case contains the sheriff's signature. There is no indication in the record whether an oral agreement or collateral discussion occurred concerning the substantive provisions of the handbook. No language in the manual either expressly endorses or disavows the notion that the manual creates a contractual relationship.

 The handbook further states that it is "designed to give [employees] a permanent reference to ... employment with Jasper County...." The manual contains, however, a provision establishing a procedure for making unilateral additions and amendments by means of a general order process.

 The handbook also contains the following provision: "No employee shall be subject to any disciplinary action except for just cause." Disciplinary action is defined as action taken against

an employee due to employee misconduct resulting in "termination, suspension, demotion, reduction in rank, or refusal to rehire at the end of a contractual period." "Improper conduct" is defined to include both "incapacity due to mental or physical disability" and "incompetency or inefficiency."

 Finally, the handbook does not contain a comprehensive detailed scheme for the procedures governing a disciplinary action. However, certain minimum requirements are set forth: all statements of just cause shall be in writing and state with particularity the reasons the sheriff deems disciplinary action necessary, all reports and investigations shall become a part of the employee's record, etc.

 It is uncontested that these minimal requirements were not complied with during the termination of plaintiffs. Plaintiffs Opposition to Summary Judgment at 7.

3. The court deferred ruling on these motions pending notification of the outcome of mediation scheduled for late March. The court has now been informed that mediation was unsuccessful.

and that the sheriff's authority to appoint and dismiss employees cannot be contracted away. Plaintiffs response to the supplemental motion argues that the general at-will rule for sheriff's deputies is subject to modification when an employee handbook is in effect.

### III. Summary Judgment Standards

■ Summary judgment should be granted only when the record reflects that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). In deciding a motion for summary judgment the court must first consult the applicable substantive law to determine what facts and issues are material. *King v. Chide*, 974 F.2d 653 (5th Cir.1992). The movant bears the initial burden of demonstrating that there is no genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Duffy v. Leading Edge Prods.*, 44 F.3d 308 (5th Cir.1995); *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir. 1985). "If the moving party meets this burden, the non-moving party who will have the burden of proof at trial must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant." *Duffy*, 44 F.3d at 312; *see also Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996 (5th Cir.1992). Summary judgment is a final adjudication on the merits, and must be employed by courts with caution.

■ In many instances, a Rule 56(c) motion for summary judgment functions like a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. In other words, although the test for summary judgment as set forth above presents "an exacting standard," "summary judgment is appropriate where the only issue

before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir.1991); *see also Neff v. American Dairy Queen Corp.*, 58 F.3d 1063, 1065 (5th Cir.1995) ("Consequently, we hold that because the disputed issue in this case is purely legal, it was appropriately resolved through summary judgment.").

■ Further, when a failure to state a claim-type defense is joined with the defense of qualified immunity in a motion for summary judgment, the proper procedure is for the court to first determine whether plaintiff has stated a claim.[4]

### IV. The § 1983 Due Process Claim

### A. Defense of Failure to State a Claim

#### 1. Prerequisites for Cause of Action

■ To prevail under 42 U.S.C. § 1983 and the Fourteenth Amendment, plaintiffs must show they enjoyed a state-created property interest in continued employment. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972). "Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* at 577, 92 S.Ct. at 2709; *see also Perry v. Sindermann*, 408 U.S. 593, 602, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972).

#### 2. General At–Will Employment Rule in Texas and Its Exception

■ The general, longstanding rule in Texas is that a public employee may be terminated at any time, with or without good cause. *See, e.g., Hicks v. Baylor Univ. Med. Ctr.*, 789 S.W.2d 299 (Tex.App.—Dallas 1990); *United Transp. Union v. Brown*, 694

---

**4.** *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) ("We ... conclude that it is not necessary for us to decide any question concerning ... immunity ... because, as we recently held in *Baker v. McCollan*, 443 U.S. 137 [99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)], '[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right "secured by the Constitution and laws"' of the United States."); *see also Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *Silver v. Franklin Township, Bd. of Zoning Appeals*, 966 F.2d 1031, 1035 (6th Cir.1992).

S.W.2d 630 (Tex.App.—Texarkana 1985). The exception to this general rule is that a public employee may under certain circumstances acquire a property right in continued employment by virtue of the terms of an employee manual. To illustrate, if the manual contains a provision that termination will occur only for just cause and, further, will occur only after certain procedural steps are adhered to, that manual may be sufficient to create under Texas law a property right if the manual is contractual in nature and manifests a mutually binding agreement between employer and employee not subject to unilateral modification. *See Garcia v. Reeves*, 32 F.3d 200 (5th Cir.1994); *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469 (5th Cir.), *cert. denied*, 502 U.S. 984, 112 S.Ct. 591, 116 L.Ed.2d 615 (1991); *Evans v. City of Dallas*, 861 F.2d 846 (5th Cir.1988); *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196 (5th Cir.1987); *Joachim v. AT & T Info. Sys.*, 793 F.2d 113 (5th Cir.1986).

### 3. Statutorily–Mandated At–Will Employment

■ At-will employment for most public employees in Texas is a matter of common law. For a few categories of employees, however, at-will employment is a matter of statute. The position of sheriff's deputy is one of those categories of employment for which there exists a separate statutory at-will provision. Section 85.003(c) of the Texas Local Government Code reads, in part, "A deputy serves at the pleasure of the sheriff." Tex.Loc.Gov't Code Ann. § 85.003(c) (Vernon 1988). Thus, sheriffs have "virtually unbridled" authority in making hiring and firing decisions, *Irby v. Sullivan*, 737 F.2d 1418, 1421 (5th Cir.1984), and "[i]t follows that deputy sheriffs have no legal entitlement to their jobs as public employees; the sheriff may fire them for many reasons or for no articulable reason at all," *Barrett v. Thomas*, 649 F.2d 1193, 1199 (5th Cir.1981), *cert. denied*, 456 U.S. 925, 102 S.Ct. 1969, 72 L.Ed.2d 440 (1982). *See also Senegal v. Jefferson County*, 785 F.Supp. 86, 88 (E.D.Tex.1992), *aff'd*, 1 F.3d 1238 (5th Cir.

1993); *Williams v. Bagley*, 875 S.W.2d 808, 812 (Tex.App.—Beaumont 1994).

### 4. No Exception to At–Will Employment for Sheriff's Deputies

■ The real crux of the parties' dispute is whether the operation of the at-will rule of § 85.003(c) may be modified in a manner similar to the common law at-will rule for employees not subject to a statutorily mandated at-will status. Having examined the sparse case law on this subject and given due consideration to public policy considerations, the court is of the opinion that sheriffs are not free to alter § 85.003(c)'s at-will mandate so as to create property interests in continued employment.[5]

One older, but frequently cited case, *Murray v. Harris*, 112 S.W.2d 1091 (Tex.Civ. App.—Amarillo 1938, writ dism'd w.o.j.), is probably the clearest jural statement of a rule that a sheriff may not by contract alter the operation of the statutorily-mandated at-will rule. *Murray* involved a written contract between a sheriff and his deputy guaranteeing the latter employment until the end of the former's elected term. The court evaluated the public policy and legislative intent considerations behind the precursor to section 85.003(c) (namely, Tex.Rev.Civ.Stat. Ann. art. 6869) to hold that a sheriff could not enter into such an arrangement because to do so "would be to destroy the right preserved to the elected public official to retain his subordinates during his pleasure." *Id.* at 1093. Said the court:

> The appointment of such subordinates involves the public funds, as well as the public welfare, and the public therefore has an interest which the Legislature sought to protect by vesting in the public official, chosen by the voters to serve them, with the power to terminate the employment of those selected to serve in such capacities at any time his judgment dictates to him that the best interests of the public demand a change in the personnel of such subordinates or that their ser-

---

**5.** This ruling obviates the need for a hearing to determine whether the employee manual in question constitutes a legally binding contract.

vices be entirely dispensed with. The statute ... provides that the tenure shall be at the pleasure of the sheriff, which is tantamount to a provision that both the appointment and tenure are discretionary with him.

*Id.*

■ *Murray* is perhaps distinguishable from the case at hand in that plaintiffs do not claim they enjoyed an *absolute* right to employment for a definite period, but claim that they enjoyed a right to termination only for cause, and pursuant to certain procedures set forth in the employee handbook. Defendants have cited to and attached for both the court and counsel a copy of an unpublished district court decision of more recent vintage which relies on *Murray* and takes it a step further to hold that terms of a county sheriff's department employee manual conditioning termination upon a finding of just cause are ineffective to create a constitutionally protected property interest. "Texas courts have refused to accept written or implied agreements as a substitute for the ... statutory language." *Newby v. O.A. Brookshire et al.,* No. MO–89–CA–93, at 5 (W.D.Tex. Sept. 25, 1989) (Bunton, C.J.). In other words, § 85.003(c) is offended by arrangements other than those—like the one in *Murray*—which create an absolute right to employment for a period of years. Less powerful agreements entered into by a sheriff, such as the agreement to condition the right to terminate upon a prior finding of just cause, also run afoul of the statute.

The rule that a sheriff's personal acts may not alter the operation of § 85.003(c), was reinforced in *Liberty County Officers Ass'n v. Stewart,* 903 F.Supp. 1046 (E.D.Tex.1995). Two deputy sheriffs alleged that a sheriff made several oral representations of a contractual nature to the effect that their jobs would be secure even if federal funding for their positions were cut. Citing *Murray,* the court twice repeated that such oral representations were insufficient to create a property right in continued employment, as "Texas law prohibits contracts that alter the status of an employee's statutorily mandated at-will employment status." *Id.* at 1055, 1056.[6]

In addition to *Murray, Newby, Stewart,* and one other case, discussed *infra,* the court has been unable to locate any other case involving actions taken *by a sheriff* to alter a deputy's at-will employment. However, at least three other cases demonstrate courts' continuing respect for the legislative intent and public policy which undergird § 85.003(c).

The first two cases demonstrate courts' unwillingness to allow *county officials* to invade the province of the elected official by altering the employment status the elected official's employees by issuing a county employment manual. In *Garcia v. Reeves County,* 32 F.3d 200 (5th Cir.1994), the Fifth Circuit held that a county commissioners court lacked the authority under Texas law to issue a county employee manual conditioning the sheriff's right to terminate a deputy upon his making a prior finding that there exists just cause. The second case, *Moreno v. Barrera,* 880 F.Supp. 492 (S.D.Tex.1994), relies heavily on *Garcia,* although it does not involve a sheriff's deputy. Nevertheless, *Moreno* reiterates the rule that a commissioners court is not authorized to alter the employment status of an elected official's employee from "at-will" to "just cause" with the issuance of a county employment manual. These cases, and particularly *Garcia,* should be taken as an indication that the public policy concerns supporting § 85.003(c)'s rule of absolute at-will employment are so strong that that section may not be abrogated by any party, even an independent body of persons like a commissioners court.

Another case which demonstrates courts' respect for § 85.003(c) and which is indicative of the prevailing judicial sentiment that § 85.003(c) means exactly what it says is *Samaniego v. Arguelles,* 737 S.W.2d 88 (Tex. App.—El Paso 1987). *Samaniego* presented the question of whether there existed an inherent conflict between the precursor of § 85.003(c) and a provision of the state constitution sufficient to effect the implicit re-

---

6. In dicta, the court noted that even in the absence of § 85.003(c), the final outcome would be unchanged, as plaintiffs could not demonstrate the existence of a writing which in a meaningful and special way limited the sheriff's right to terminate employment at will. *Id.* at 1055–56.

peal of the statute under the circumstances of the case. Two sheriff's deputies on protracted sick leave were terminated by the sheriff because the county jail had been deemed out of compliance with regulations requiring certain staffing levels and risked shut-down within thirty days if the situation were not corrected. Replacements could not be hired unless the two deputies on leave were terminated.

The constitutional provision authorized counties to pay medical expenses and a salary for sheriff's deputies injured in the course of their duties, with such payments to cease upon the expiration of the deputy's term of office.[7]

The court went out of its way to read the constitutional provision and the precursor of § 85.003(c) in harmony with one another, so as to uphold the sheriff's absolute right to terminate the two on-leave employees. The court stressed that repeal of a statute by implication is highly disfavored. *Id.* at 89. It also stressed the important public policy foundation on which § 85.003(c) rests.[8] The court then interpreted "expiration" of the deputies' terms of office to be a separate and distinct date from the date of termination of the deputies.[9] Their terms of office expired at the end of the sheriff's elected term. This reading vindicated the sheriff's exercise of his absolute right to fire at his pleasure as well as the injured deputies' constitutionally-provided right to continued compensation.

In short, the above discussion demonstrates that courts have held that the absolute at-will employment rule for sheriff's deputies may not be abrogated by the sheriff himself, by an outside body, or even by a seemingly conflicting state constitutional provision. Were this all the law that existed in the point, the court would have little difficulty reaching its final conclusion that the employment manual at issue here is ineffective to create a property right for Fourteenth Amendment purposes. Two cases, each of whose importance is diminished for an independent reason, nevertheless show that the courts are not in entire unanimity on the subject.

In *El Paso County Sheriff's Deputies' Ass'n, Inc. v. Samaniego,* 802 S.W.2d 727 (Tex.App.—El Paso 1990), the Texas Court of Appeals dealt with an action brought by three deputy sheriffs who were not redeputized at the commencement of the sheriff's newly elected term to compel the sheriff to submit the failure to rehire to arbitration under a collective bargaining agreement. The agreement had been entered into between the sheriff and the deputies' association and required collective bargaining upon termination of a deputy by the sheriff. Using analysis identical to that in *Samaniego v. Arguelles,* 737 S.W.2d 88 (Tex.App.—El Paso 1987), the court concluded that the deputies had not been terminated (their terms had merely expired) and held for the sheriff.

In doing so, however, the court noted the statutory right to terminate under § 85.003(c). In one line, and with no analysis or citation to authority, the court found that "[t]his statutory right to terminate was abrogated by the contract in question."

The only other possible suggestion of judicial disagreement with the result reached by this court is found in *Cote v. Rivera,* 894 S.W.2d 536 (Tex.App.—Austin 1995). *Cote* involved a statute governing employment of assistants by a chief probation officer that allowed for "remov[al] by appointing authority at any time." The parties disputed whether the operation of the statute could be modified by the county by contract to create a property interest. The court distinguished *Murray* as a case dealing with a contract for a specified period of employment and "[a]ssum[ed] without deciding that Travis County

---

7. Tex. Const. art. III, § 52(e).

8. The objective of Article 6869 is to provide the sheriff with personnel to protect and serve the public.... The sheriff is responsible for the official acts of his deputies. To effectively aid him in implementing this responsibility and controlling this liability, the deputies continue in office at the pleasure of the sheriff. This has been interpreted to mean the sheriff can terminate the deputy's tenure at will. *Id.*

9. "In its ordinary meaning, [the word 'expire'] connotes the coming to a conclusion or end or to have run its course. The word terminate carries a more abrupt inference.... It suggests positive interference." *Id.* at 90.

could alter Cote's at-will employment status." *Id.* at 540. The assumption served the goal of allowing the court to make a ruling without having to definitively rule on the specific issue of whether the statute could be abrogated by contract, for in the end the court found that the manual did not contain an express agreement and provided only general procedural guidelines for termination and, therefore, did not create a property interest. *Id.* at 541.

Because the court is of the opinion that on balance the weight of authority supports the conclusion that a sheriff may not by contractual arrangement alter the statutory at-will rule for employees, the plaintiffs did not enjoy a state-created property interest in their continued employment by virtue of the sheriff's department employment manual. Plaintiffs' attempted constitutional tort cause of action pursuant to 42 U.S.C. § 1983 therefore fails to state a claim upon which relief can be granted.

## B. Defense of Qualified Immunity

The analysis in the preceding section disposes of the need to address defendant Davis' qualified immunity defense. When an attempted claim pursuant to 42 U.S.C. § 1983 fails to state a claim upon which relief can be granted, a defendant's assertion of the qualified immunity defense becomes moot. *Martinez v. California*, 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481 (1980) (citing *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979)); *Carlson v. Conklin*, 813 F.2d 769, 771 (6th Cir.1987) ("If the plaintiff here has failed to state a § 1983 claim, Johnson's qualified immunity defense becomes moot."); *see Hill v. Department of the Air Force*, 884 F.2d 1318, 1320 (10th Cir.1989), *cert. denied*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990) ("Because we find no *Bivens* remedy under the circumstances of this case, we need not

address the qualified immunity issue."); SHELDON H. NAHMOD, CIVIL RIGHTS AND CIVIL LIBERTIES LITIGATION: THE LAW OF SECTION 1983, § 8.01, at 103 (3d ed. 1991) ("Once the prima facie 42 U.S.C. § 1983 cause of action is established, and it turns out that the individual defendant is not absolutely immune from liability for damages, the question becomes whether the defendant is nevertheless entitled to some kind of defense against or immunity from damages liability.").

Alternatively, language in certain cases suggests that although the failure to state a claim-type issues should be addressed prior to an inquiry of whether the constitutional right asserted by plaintiff was clearly established at the time the defendant acted, both questions are part of a qualified immunity analysis.[10] While this is merely a matter of semantics, under this formulation, then, the qualified immunity analysis would not be rendered "moot" by a finding that no constitutional right had been violated. Rather, the qualified immunity issue would simply be resolved in favor of the defendant.

For all of the foregoing reasons, summary judgment is proper in favor of Sheriff Davis and Jasper County on the due process claim.

## V. The Age Discrimination Claims

### A. Factual Allegations

Both plaintiffs sue Jasper County under the Age Discrimination in Employment Act.[11] Plaintiff Bumstead claims that Roscoe Davis warned Bumstead before he was elected that he would, if elected, replace him with a younger deputy who would "write more tickets and kick ass." Plaintiffs' First Amended Original Complaint at 3. Plaintiff Few's sole allegations are that Sheriff Davis had encouraged him to retire because of his age, *id.* at 5, and that upon termination he was told that the sheriff was afraid to expose him to danger because of his age.

---

10. *Siegert*, 500 U.S. at 232, 111 S.Ct. at 1793 ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted the violation of a constitutional right at all."); *see Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir.

1992) ("At this early stage in the proceedings, the Rule 12(b)(6) defense and the qualified-immunity defense become intertwined.").

11. "It shall be unlawful for an employer ... to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).

Defendant Jasper County alleges that the position of deputy "exists to perform mediation of conflicts; provide for the public safety; and respond to emergency situations." Defendants' Motion for Summary Judgment at 13. The county further alleges that there exist only eleven deputy positions, the geographic coverage area is large, and the volume of work is great, and that, consequently, each deputy is required to be proficient in the full range of duties. *Id.* at 9, 13. Both individuals were terminated due to concern over their physical ability to complete the job tasks in such a manner as to insure the safety of county residents.[12] In support of this, the county alleges that calls were screened and that plaintiffs were not dispatched on calls involving violence. *Id.*

**B. The Prima Facie Case**

■ Courts often follow the shifting burden of proof pretext method of proof set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a prima facie claim of age discrimination under the Age Discrimination in Employment Act, *see, e.g., Mooney v. Aramco Servs. Co.,* 54 F.3d 1207 (5th Cir.1995), under that act, and the Supreme Court has assumed that such a framework is proper. *O'Connor v. Consolidated Coin Caterers Corp.,* No. 95–354, 1996 WL 142564, at \*2 plaintiff must demonstrate that he or she was

> (1) discharged; (2) qualified for the position; (3) within the protected age class—over 40—at the time of discharge; and (4) replaced by a younger person—but not insignificantly so, or otherwise discharged because of his or her age.

*O'Connor,* 1996 WL 142564, at \*3; *cf. Moore v. Eli Lilly & Co.,* 990 F.2d 812, 815 (5th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). If the plaintiff successfully meets this threshold, then the

burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the discharge. *Waggoner v. City of Garland,* 987 F.2d 1160, 1164 (5th Cir.1993). If the employer is successful in producing such a reason and rebutting the presumption, then the burden shifts back to the employee to demonstrate that the employer's proffered reasons are merely a "pretext for unlawful discrimination." *Id.*

**C. Pretext**

Because defendant Jasper County treats it as proven in its brief, it is assumed for purposes of discussion that plaintiff successfully asserted a prima facie case of age discrimination. *Cf. Waggoner,* 987 F.2d 1160.[13] Defendant Jasper County has cited job ability as a legitimate basis for the terminations. The question remains, then, whether, viewing the evidence in the light most favorable to their claim, plaintiffs have tendered factual evidence which will enable a jury to reasonably conclude that the county's justification is a mere pretext for unlawful age discrimination. *Bodenheimer v. PPG Indus.,* 5 F.3d 955, 958 (5th Cir.1993).

Plaintiff Bumstead contends that the county's justification is a pretext based on the statement Sheriff Davis allegedly made to plaintiff before being elected sheriff that if elected he would replace him with a younger deputy who would "write more tickets and kick ass." Plaintiff Few contends that the county's justification is a pretext for age discrimination based on (1) the alleged encouragement given by Sheriff Davis to Few that he should retire because of his age and (2) Supervisor Jack Davis' statement to Few upon termination that the department was afraid to expose him to danger because of his age.

12. For example, Sheriff Davis stated at his April 13, 1995 deposition that he "just didn't believe that Mr. Bumstead ha[d] the stamina and physical ability to do the job of a deputy sheriff." Deposition of Sheriff Roscoe Davis at 58. Sheriff Davis noted that plaintiff Few "was not in real good physical condition," *id.* at 50, and experienced a "lack of mobility ... a problem with walking ... a limp, a shuffle," *id.* at 50–51.

13. Although the final prong of the prima facie case was modified by the recent Supreme Court ruling in *O'Connor,* the court nevertheless has little difficulty assuming for purposes of this motion that a prima facie case has been stated. Bumstead was 63 at the time of his termination. Few was 66 at the time of his termination. Both men were replaced by deputies under the age of 40.

**1334**

Comments which suggest, even indirectly, that an employer may have considered age are clearly relevant to an age discrimination claim. *Hansard v. Pepsi–Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). However, the Fifth Circuit has stated that stray comments regarding an employee's age are, standing alone, insufficient to support a finding of unlawful age discrimination. *Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1166 (5th Cir.1993) ("[M]ere stray remarks, with nothing more, are insufficient to establish a claim of age discrimination. . . ."); *see Normand v. Research Institute of America, Inc.*, 927 F.2d 857, 864 n. 3 (5th Cir.1991) (citing cases from other circuits which held that anecdotal remarks are insufficient to support an inference of age discrimination, and then distinguishing these cases on the basis that the plaintiff in *Normand* had "presented more than the discriminatory comments of his supervisors," including evidence of differential treatment of his younger replacement);

*Turner v. North Am. Rubber, Inc.*, 979 F.2d 55, 59 (5th Cir.1992) (remark by boss of terminated employees made over a year prior to terminations that he was sending "three young tigers" to assist with operations not sufficient to defeat defendant's motion for judgment notwithstanding the verdict); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir.1991) (stray comments that are vague with respect to age, remote in time, or made by persons in inferior positions in the administrative hierarchy insufficient to establish age discrimination). Other circuits similarly discount evidence of stray remarks.[14] A "stray" remark is a remark which is isolated (i.e., not accompanied by other remarks similar in nature) or not accompanied by other evidence indicative of discriminatory animus.[15] Conversely, remarks are not considered stray and may be effective to defeat a motion for summary judgment when they occur with some frequency or when they exist in combination with other evidence of age-based animus.[16]

**14.** *See, e.g., Merrick v. Farmers Ins. Group*, 892 F.2d 1434 (9th Cir.1990) (comment that person chosen for position sought by member of protected class under ADEA was "a bright, intelligent, knowledgeable young man" insufficient in absence of other competent evidence of pretext to defeat summary judgment); *cf. EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir.1992) (summary judgment proper notwithstanding statements made by management consultant to defendant printing company that "too many people have been here too long and make too much money," that "the company didn't have young blood in the company being crossed [sic] trained," and that "if employees had been there 10 years or more, they needed to move on," as these statements apply only to length of service and not age of the employee); *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5 (1st Cir. 1990) (statements made in connection with employee productivity report focusing on the sales force to the effect that "the sales personnel was [sic] getting too old" and that this was becoming a "problem" for the company could not be used to show pretext and draw conclusion of discriminatory intent with respect to plaintiff, who was several rungs up the corporate ladder so as to defeat motion for summary judgment); *Haskell v. Kaman Corp.*, 743 F.2d 113 (2d Cir.1984) (plaintiff terminated at age fifty-seven in 1978; error for trial court to admit into evidence three statements by company president: one in the early 1960s referring to two employees as "old ladies with balls," a second in the early 1970s concurring with an article which stated that there is a

relationship between aging and strokes, and a third in 1974 or 1975 referring to certain younger employees as "young turks"; statements were not relevant to question of whether plaintiff was terminated due to his age, and were unduly prejudicial).

**15.** *Cf. Normand*, 927 F.2d at 864 n. 3.

**16.** *See, e.g., Levin v. Analysis & Technology, Inc.*, 960 F.2d 314 (2d Cir.1992) (evidence that plaintiff's supervisor told him he was "over the hill," that he was set in his ways, and that he suffered from memory loss, coupled with fact that a project manager pushed him into a chair with wheels asking, "Are you ready for the wheelchair?" sufficient in combination with other evidence to defeat motion for summary judgment; other evidence consisted of fact that plaintiff's duties were assumed by persons at least twelve years younger than he, that defendant's excuse of budget shortfall was compromised by fact that very similar position was advertised after plaintiff's termination, and that plaintiff's irascible nature had been understood and accepted as a personality quirk for years); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138 (5th Cir.1991) (upholding jury verdict finding age discrimination; long range plan for defendant company had included references to bringing in "new blood" and forming a "young team"; company president had dismantled plaintiff's job function by function by transferring responsibilities to younger workers; plaintiff, a former vice-president and assistant to the president in the corporation and a man of

## D. Plaintiff Bumstead

■ The remark involved in plaintiff Bumstead's claim involves comment about both his age and the productivity of older workers in general. In addition to the rules cited in the preceding section, the Fifth Circuit has had occasion to visit certain specific types of age-related comments. For example, the Fifth Circuit has held that a stray reference to the age of a replaced worker is not sufficient evidence as a matter of law to support a finding that an employer's asserted nondiscriminatory basis for termination was a pretext. *Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir.1992), *cert. denied*, 508 U.S. 960, 113 S.Ct. 2929, 124 L.Ed.2d 679 (1993) (reference that "older" workers were being replaced). Moreover, an employer's observation that younger workers could do faster and better work, even when coupled with a derogatory reference to an employee's advanced age, is not sufficient evidence to defeat an employer's motion for summary judgment. *Waggoner*, 987 F.2d at 1166 (statement about younger workers' productivity coupled with reference to plaintiff as "an old fart").

■ Because there is no evidence that remarks similar to the one alleged occurred on other occasions and because the record is devoid of any other evidence that defendant Jasper County's asserted justification for termination is pretextual, defendant's motion for

summary judgment on plaintiff Bumstead's age discrimination claim will be granted.[17]

## E. Plaintiff Few

■ The sum of plaintiff Few's summary judgment evidence on the age discrimination claim consists of two comments. The Fifth Circuit has had occasion to comment on the type of statement that forms plaintiff Few's first item of proof. In general, comments that can be construed as encouraging an older employee to retire are, standing alone, insufficient evidence to support judgment that employer's asserted motivation was a pretext. *See, e.g., Atkin v. Lincoln Property Co.*, 991 F.2d 268 (5th Cir.1993) (statement that plaintiff was "getting up there in years" and that it would be a good idea for him to retire); *Moore*, 990 F.2d at 818 (comment by supervisor to older employee that if he were in his position he would not be working but "would be out seeing the world," coupled with vulgar comment regarding plaintiff's ability as an "old man" to perform excretory function, insufficient evidence of pretext to defeat summary judgment). Plaintiff also claims that he was told by the sheriff's supervisor that the sheriff was "afraid to expose [him] to danger" because of his age. The court has been unable to locate an age discrimination case treating the specific issue of whether a comment related to an employer's desire to keep an older worker out of dangerous situations can constitute

thirty years' experience, was then transferred to a position requiring one year of experience in a warehouse and was, ultimately, relegated to a janitorial position in that warehouse; plaintiff's direct supervisor at the warehouse referred to plaintiff as "old man" and posted a sign in the warehouse reading, "Bradley is old"); *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239 (8th Cir.1991) (motion for summary judgment denied when various employees of defendant historical society referred to plaintiff as "blind old bat," "old coot," "blind old coot," and "dirty old man," and when boss stated during deposition, "As with any art or science, you had many archaelogists [sic] who were somewhat younger than he and who were coming on with somewhat new ideas, fresh enthusiasm"; in addition to these numerous remarks, there was evidence that, contrary to defendant's representation, much work was undertaken in defendant's field of specialization after his termination and that plaintiff's responsibilities had been assigned to younger em-

ployees; evidence also included allegation that plaintiff's supervisor mocked plaintiff's back problems by mimicking his posture and walk); *Normand*, 927 F.2d 857 (reversing J.N.O.V. and reinstating jury verdict of age discrimination when evidence included testimony that defendant company had a policy of planned turnover of older workers, testimony that numerous applicants were rejected because of age, and testimony regarding over half a dozen comments by two managerial employees relating to the ages of specific members of the company's work force).

17. The only other "evidence" of a nexus between plaintiff Bumstead's termination and his age is plaintiff's belief that his age was the basis for the termination. A plaintiff's subjective opinion regarding the basis of termination is insufficient to establish an age discrimination claim. *Elliott v. Group Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir.1983), *cert. denied*, 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984).

sufficient evidence to defeat summary judgment on the pretext question. However, there does not appear any basis for departing from the general rule with respect to employer comments. The court determines that in the absence of other proof of age discrimination, the two comments presented by plaintiff Few should be considered stray remarks and are insufficient to withstand a motion for summary judgment. For these reasons, defendant Jasper County's motion for summary judgment on plaintiff Few's age discrimination claim is granted.

## VI. The Rehabilitation Act Claim

### A. Factual Allegations

Plaintiff Bumstead alleges that in December 1992 he learned he had prostate cancer and that he required surgery. He was informed by his physician that he would require eight to ten weeks of leave from work. Plaintiff Bumstead had the surgery during the first week of 1993, and was released to return to work in the beginning of March. Plaintiff alleges that he was terminated by defendant Davis, who had assumed the position of sheriff on January 1, because the latter viewed him as having a disability.

Defendant claims that plaintiff Bumstead was terminated due to concern over whether he was physically capable of performing the job of deputy sheriff. However, defendant denies that plaintiff was viewed as incapable of engaging in any work activity, and cites the fact that plaintiff was offered an alternate job in support of this contention. Defendant also contests the accuracy of the date on which plaintiff says he was released, and claims that plaintiff was not finally released to return to work until May. Defendant claims that such being compelled to accommodate a lengthy period of leave is not a "reasonable accommodation" within the meaning of the Rehabilitation Act.

### B. Prima Facie Case

■ As with the age discrimination claim, the *McDonnell Douglas* shifting burden scheme may be used in connection with the Rehabilitation Act claim. *Prewitt v. United States Postal Serv.*, 662 F.2d 292 (5th Cir.

1981); *cf. United States v. Morvant*, 898 F.Supp. 1157 (E.D.La.1995).

■ In order to lay out a prima facie case of handicap discrimination, plaintiff must show that (1) he is a handicapped person within the meaning of the Act; (2) the disputed program is federally funded; and (3) he is otherwise qualified for the position. *Brennan v. Stewart*, 834 F.2d 1248, 1260 (5th Cir.1988). A person is handicapped if he or she (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 29 U.S.C. § 706(8)(B) (Supp.1995). Major life activities include such activities as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 C.F.R. § 1630.2(i). An impairment substantially limits a major life activity if a person is "[u]nable to perform a major life activity that the average person in the general population can perform" or "if that person" is "[s]ignificantly restricted as to the condition, manner or duration under which [he or she] can perform a major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Id.* § 1630.2(j)(i, ii).

Plaintiff argues that his claim falls under the "regarded as having such an impairment" prong. Plaintiff asserts that defendants viewed plaintiff as possessing a handicap which significantly affected his ability to engage in a major life activity, work.

### C. Analysis

Defendant has demonstrated in its motion and accompanying brief that there exists no genuine issue of material fact on the Rehabilitation Act claim, for plaintiff is unable to assert a prima facie case. Specifically, defendants have demonstrated that there remains no issue on the question of whether defendants viewed plaintiff Bumstead's condition as one which either prevented him from working or significantly restricted his ability to work. Plaintiff was terminated from employment as a deputy sheriff by Sheriff Davis because the latter "just didn't

believe that Mr. Bumstead had the stamina and the physical ability to do the job of a deputy sheriff." Deposition of Defendant Bumstead at 58. Yet on at least two occasions prior to termination from his post as deputy sheriff, defendant Davis offered plaintiff the position of bailiff, a position which defendant Bumstead described as not as physically taxing as the deputy position. Deposition of Defendant Bumstead at 43–46.

 The Fifth Circuit and other circuits have held that " '[a]n impairment that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one.' " *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (quoting *Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985)); *Welsh v. City of Tulsa*, 977 F.2d 1415 (10th Cir.1992); *Maulding v. Sullivan*, 961 F.2d 694 (8th Cir.1992), *cert. denied sub nom. Maulding v. Shalala*, 507 U.S. 910, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993); *Forrisi v. Bowen*, 794 F.2d 931 (4th Cir.1986). Therefore, "[a]n employer's belief that an employee is unable to perform one task with an adequate safety margin does not establish per se that the employer regards the employee as having a substantial limitation on his ability to work in general." *Chandler*, 2 F.3d at 1393.[18]

 The case of *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723 (5th Cir.1995) is illustrative on the question whether an employer views an employee as having a substantial limitation on the ability to work. Plaintiff in *Dutcher* sustained a gunshot wound to her arm prior to her employment with defendant. Upon employment plaintiff was assigned to a welding job requiring frequent climbing. Plaintiff complained of the assignment and was ultimately transferred to a welding position requiring little or no climbing, at which she worked for nine months or so. Plaintiff was then laid off during a large-scale work force reduction. She was later recalled, and was given a job restriction classification appropriate to her injury by the company's infirmary. She was then advised that the company could not employ her due to her job restriction. She complained to the company's labor relations office, which instructed her to obtain a current doctor's report on her injury. When she returned five weeks later with the report, she was again denied employment because a reduction in force had eliminated every position in plaintiff's job classification. The Fifth Circuit held that summary judgment was proper on plaintiff's Americans with Disabilities Act claim.[19] Plaintiff was not regarded by her employer as having an impairment which substantially limited the major life activity of working because defendant "continued to employ her as a *non-climbing* welder after her initial transfer out of the [position involving climbing]—the transfer which she claims put them on notice of her impairment." *Id.* at 728. Further, there was no evidence to contradict defendant's assertion that there were no non-climbing positions available when plaintiff was denied reinstatement.[20]

18. See also *de la Torres v. Bolger*, 610 F.Supp. 593 (N.D.Tex.1985), *aff'd*, 781 F.2d 1134 (5th Cir.1986), in which a postal worker who claimed to be handicapped due to left-handedness was denied recovery under the Rehabilitation Act. The court noted that in order to prevail plaintiff would have to demonstrate that defendant viewed plaintiff as being substantially limited by his left-handedness in his ability to work. The court's language made clear that this perceived inability to work would have to relate to work generally and not solely to the position from which he was terminated. "An impairment that interferes with an individual's ability to do a particular job, but does not significantly decrease that individual's ability to obtain satisfactory employment otherwise is not 'substantially limiting' for purposes of the Rehabilitation Act." *Id.* at 596.

19. The definitions of disability in the Americans with Disabilities Act and the Rehabilitation Act are substantially similar, and analysis under one act is considered highly relevant to analysis under the other. *See, e.g., id.* at 725 n. 4, 727 n. 14.

20. Similarly, in *Elstner v. Southwestern Bell Tel. Co.*, 659 F.Supp. 1328 (S.D.Tex.1987), *aff'd*, 863 F.2d 881 (5th Cir.1988), an individual formerly holding a position requiring the climbing of telephone polls was demoted to a lower-paying position that did not involve climbing after he injured his knees. The court found that although plaintiff had an impairment, it did not significantly affect either his ability to work, or the employer's perception of his ability to work, as he had been retained and placed in a different position.

■ Because undisputed evidence shows that defendant offered a substitute position to plaintiff Bumstead on at least two occasions, defendants have carried, in light of the absence of other proof on this issue, their summary judgment burden on the question of whether plaintiff was terminated due to a perception that he could not successfully participate in the major life activity of employment.

### VII. Conclusion

Defendants' motions for summary judgment will be granted.